[No. E004131. Fourth Dist., Div. Two. Aug. 29, 1988.]

WAYNE SCHELL, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and
Respondent.

**COUNSEL**

Ernest E. Gilbert for Plaintiff and Appellant.

John R. Bury, Tom P. Gilfoy, Mark C. Allen III and Douglas P. Ditonto for Defendant and Respondent.

**OPINION**

**HEWS, J.**—Plaintiff Wayne Schell appeals from a judgment of dismissal entered pursuant to the sustaining of a general demurrer to his amended complaint without leave to amend.

### FACTUAL AND PROCEDURAL HISTORY

Public Utilities Code section 739[1] provides that the Public Utilities Commission (PUC) "shall designate a baseline quantity of gas and electricity which is necessary to supply a significant portion of the reasonable energy

---
[1] All future code references are to the Public Utilities Code unless otherwise indicated.

needs of the average residential customer." (§ 739, subd. (a).) The section also provides that the PUC require all gas and electric corporations to establish low "baseline rates" for supplying these baseline quantities to residential customers. (§ 739, subd. (c).)

Section 739.5 provides, in turn, that the PUC shall require that any "master-meter" customer who furnishes gas or electric service through submeters to tenants of a "mobilehome park, apartment building, or similar residential complex" shall charge each such tenant at the same domestic rate, including baseline service, as though the tenant had been receiving service directly from the electric or gas corporation. (§ 739.5, subd. (a).) This section also directs the PUC to require that corporations furnishing services to the master-meter customer establish rates for such service "at a level which will provide a sufficient differential to cover the reasonable average costs to master-meter customers of providing submeter service." (*Ibid.*)

Pursuant to its mandate under section 739, the PUC designated baseline quantities of electricity and volumes of gas on an interim basis in 1976. (Dec. No. 86087 (1976) 80 Cal.P.U.C. 182.) In its decision, the PUC concluded that the term "residential customer" in section 739 included single-family houses, townhouses, apartments, condominiums, and mobile homes; and excluded transient trailer parks, ordinary motels and hotels, campgrounds, hospitals, convalescent homes, student rooming houses, college dormitories, fraternities and sororities, and military barracks "because of the transient nature of their inhabitants." (*Id.,* at pp. 188-189.)

As mandated by section 739.5, the PUC required that the gas and electric corporations within the state establish domestic rates encompassing the baseline quantity requirement for master-metered facilities. Respondent (Cal. Ed.) established two such domestic rate schedules—a general domestic rate schedule for multifamily accommodations (DMS-I) and a specific domestic rate schedule exclusively for mobile home parks (DMS-II).

Plaintiff is the owner of a recreational vehicle park. On September 11, 1986, plaintiff filed a complaint against Cal. Ed. for damages for "DISCRIMINATION, DENIAL OF EQUAL PROTECTION OF THE LAWS, DENIAL OF DUE PROCESS, CONSTRUCTIVE TRUST, AND FOR INJUNCTIVE RELIEF." Plaintiff alleged that his recreational vehicle park was a master-metered park with separate submeters for each unit pursuant to section 739.5 and thus entitled to baseline allocations under section 739. The basis of plaintiff's complaint was that Cal. Ed. was discriminating against him by charging him a commercial rate for electricity and by refusing to supply

him under its DMS-II rate schedule reserved for mobilehomes, and that such discrimination had resulted in a large amount of damages to him.

Cal. Ed. generally demurred to the complaint on the grounds that (1) jurisdiction over the controversy lay with the PUC, (2) plaintiff had not pursued his administrative remedies before the PUC, (3) the complaint failed to state a cause of action, and (4) it was prevented by law from modifying the DMS-II applicability criteria as demanded by plaintiff.

On December 9, 1986, two days before the hearing on the demurrer was to be held, plaintiff filed an amended complaint. This complaint was virtually the same as the initial complaint except that it contained an added cause of action for declaratory relief. In the declaratory relief count, plaintiff asked the court to determine whether or not (1) he is obligated to provide submetered electricity to his tenants and to charge them under a domestic rather than a commercial rate for this service; (2) a person using a recreational vehicle as his residence is a residential customer entitled to a baseline allocation; (3) he has the right to determine for himself if he comes within the residential and baseline provisions of sections 739 and 739.5; (4) sections 739 and 739.5 are unconstitutional because they constitute a taking without due process of law and a denial of equal protection of the laws; and, (5) the DMS-II rate schedule is "the embodiment of the implementation of mandatory duties imposed on the" PUC by section 739.5.

Cal. Ed. demurred generally to the amended complaint. Its demurrer was based on the same grounds as its previous demurrer to the original complaint, except that it also argued that the issues in the amended complaint were already pending in a proceeding before the PUC. The hearing court sustained Cal. Ed.'s demurrer without leave to amend.

In preparation for our decision on appeal, this court asked the parties to furnish us with information concerning the pendency of the issues raised in the amended complaint in actions before the PUC.[2]

In case number 86-01-004 before the PUC a complaint was filed by owners of four recreational vehicle parks against Cal. Ed. on January 6, 1986, requesting, among other things, that the PUC order Cal. Ed. to supply electric service to complainants under the DMS-II mobilehome park rate schedule. This case was consolidated with case number 86-02-002 in which similarly situated plaintiffs complained against the Pacific Gas and Electric Company. Plaintiffs in the PUC action are represented by Ernest E.

---

[2] We take judicial notice of the pleadings in PUC case numbers 86-01-004 and 86-02-002, the pleadings in PUC case number 86-12-047, and the opinion in PUC decision number 87-12-066, pursuant to Evidence Code sections 452, subdivisions (c) and (d), and 459.

Gilbert, who also represents plaintiff Schell in the matter before us on appeal. The Western Mobilehome Association requested and was granted leave to intervene in the PUC action, seeking an order that recreational vehicle parks be served under a separate domestic rate schedule designed specifically for such parks. Subsequently, plaintiffs requested and were granted leave to amend the prayer of their complaint in case number 86-01-004. In their amendment they requested that, should the PUC determine that the DMS-II rate schedule could not be applied to recreation vehicle parks, it declare the DMS-II schedule and sections 739 and 739.5 unconstitutional under equal protection and due process clauses of the state and federal Constitutions. These cases have been briefed and heard and now await the decision of an administrative law judge.

Plaintiffs in case number 86-01-004, again represented by plaintiff's counsel herein, requested and were granted leave to intervene in Cal. Ed.'s latest general rate case before the PUC, case number 86-12-047. They asked for the following relief in the alternative: "a. Order that the tariff DMS-2 is the appropriate tariff upon which to serve Intervenor's master meter. [¶] b. Order Applicant Southern California Edison Company to establish a uniform rate for Intervenor's master meter service at a level which will provide a sufficient differential to cover the reasonable average costs to master meter customers of providing submeter service, or [¶] c. Make findings and orders that will inform Intervenors of the proper method of providing electric service to their tenants without potential civil or criminal liability for violation of tenants [sic] rights pursuant to the CALIFORNIA PUBLIC UTILITIES CODE, the MOBILEHOME RESIDENCY LAW [CC § 798 et seq.], and the RECREATIONAL VEHICLE PARK OCCUPANCY LAW [CC § 799.20 et seq.]."

In its decision on Cal. Ed.'s general rate case, decision number 87-12-066, the PUC refused to apply the DMS-II rate schedule to recreational vehicle parks. It also concluded that there was not sufficient evidence before it upon which to determine whether a new rate schedule should be designed and implemented for such parks. However, the PUC made the following order: "We will therefore direct Edison to conduct a study of the need for and feasibility of such tariff [rate] changes and present the results of that study in its next general rate case. To undertake this task, Edison will be required to provide standards by which it can objectively judge and realistically monitor the status of the RV tenant." A request for rehearing on decision number 87-12-066, filed by the intervener, is now pending before the PUC.

Plaintiff raises the following contentions on appeal: (1) Respondent's general demurrer to the entire complaint should be overruled if any of the causes therein are sustainable; (2) the PUC does not have exclusive jurisdiction over all matters having any reference to regulation of public utilities,

and any court of general jurisdiction may interpret any order of the commission, consider a complaint for a tortious act, and award money damages; (3) where the PUC has ordered the formulation of a plan, and the utility has complied with the order, the trial court has jurisdiction to adjudicate any disputes between the utility and a third party arising under the plan, thereby giving effect to the plan in aid of the commission; (4) where the state grants a monopoly to a public utility the utility may not use that power in an unconstitutional manner and any such use is "state action"; (5) exercise of discretion by the trial court is subject to review where adequate cause for such relief is shown.

### DISCUSSION

■ Plaintiff contends before this court, as he did on the trial level, that the superior court has jurisdiction of his case because Cal. Ed. has refused to give him the benefits of a reduced rate schedule which clearly applies to him. He argues that in such situations causes of action alleging discrimination and resulting damages are properly before the courts under section 2106.[3] The real gravamen of plaintiff's suit, however, as evidenced by his addition of the cause of action for declaratory relief to his complaint, is the question of what rate schedule is appropriate for recreational vehicle parks. As we explain below, this is a matter which is exclusively within the purview of the PUC, and of our Supreme Court for purposes of review.

The PUC "is a state agency of constitutional origin with far-reaching duties, functions and powers. (Cal. Const., art. XII, §§ 1-6.) ■ The Constitution confers broad authority on the commission to regulate utilities, including the power to fix rates, establish rules, hold various types of hearings, award reparation, and establish its own procedures." (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 905 [160 Cal.Rptr. 124, 603 P.2d 41].) Sections 728 and 729 confer upon the PUC authority to determine the lawfulness and reasonableness of any individual rates or series of rates charged by a public utility within the state, and establish new rates. (*Pacific Tel. & Tel. Co.* v. *Public Util. Com.* (1965)

---

[3] Section 2106 provides: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. A action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

"No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt."

62 Cal.2d 634, 645-646 [44 Cal.Rptr. 1, 401 P.2d 353].) Sections 1756 through 1760 provide that jurisdiction to review any actions of the PUC lies exclusively with this state's Supreme Court. This grant of jurisdiction includes the power to determine whether or not orders and decisions of the PUC are invalid on constitutional grounds. Accordingly, the superior court is precluded from deciding issues which must necessarily be decided by the PUC in its continuing exercise of jurisdiction over rate making, rate regulation, and similar issues. (See *People* v. *Superior Court* (1965) 62 Cal.2d 515, 518 [42 Cal.Rptr. 849, 399 P.2d 385].)

█ In the instant case the Legislature, besides granting general powers to the PUC, has assigned to the commission the specific duties of establishing baseline quantities of gas and electricity, setting baseline rates for residential customers, and overseeing the method and the rates under which utilities charge master-meter customers for baseline service. (§§ 739, 739.5.) The decision as to whether or not master-metered residential recreational vehicle parks should be charged at the same rate as master-metered mobile-home parks, or at another domestic or commercial rate, is clearly within the exclusive purview of the PUC as part of its continuing jurisdiction over rate making and rate regulation in provision of baseline service to residential customers of the electric and gas corporations. Constitutional challenges to the validity of such rates must be decided by our Supreme Court.

Plaintiff, citing *Vila* v. *Tahoe Southside Water Utility* (1965) 233 Cal.App.2d 469 [43 Cal.Rptr. 654], maintains that the superior court does have jurisdiction under section 2106 to hear and determine causes for injunctive relief and damages based on a utility's unlawful failure to provide services to a customer. In the *Vila* case, however, a water company failed to provide service to a customer even though his obligation to furnish water "was clear under an unambiguous provision in its own rules," which it had been required to adopt under an order of the PUC. (*Id.,* at p. 479.) In the instant case, it is an open question whether the DMS-II rate schedule applies to plaintiff, and for the superior court to undertake to determine this issue would be a usurpation of the PUC's authority.[4]

Not only is the gravamen of this case within the exclusive jurisdiction of the PUC, but the issues raised in plaintiff's cause of action for declaratory relief are now pending before the PUC in three cases, numbers 86-01-004, 86-02-002, and 86-12-047. █ "Section 2106 can only be utilized when it will not interfere with or obstruct the [PUC] in carrying out its own policies. (*Waters* v. *Pacific Telephone Co.* [(1974)] 12 Cal.3d 1, 11 [114

---

[4] It appears from the opinion rendered in PUC's decision number 87-12-066 that the question is no longer open—that DMS-II does not apply to plaintiff's situation. However, that decision is apparently not yet final.

Cal.Rptr. 753, 523 P.2d 1161].) . . . The PUC has exclusive jurisdiction over the regulation and control of utilities, and once it has assumed jurisdiction, it cannot be hampered, interfered with, or second-guessed by a concurrent superior court action addressing the same issue. [Citations.] Even if the PUC makes an invalid order, it is binding and conclusive until annulled by the Supreme Court, which is the only court that can review PUC orders. [Citations.] Moreover, if a superior court were to determine certain rights between parties, a later applicable decision by the PUC would supersede the prior superior court judgment." (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 681 [187 Cal.Rptr. 219].)

 Based on the above reasoning, we hold that the hearing court properly sustained Cal. Ed.'s general demurrer without leave to amend. A demurrer is proper in cases in which the plaintiff is not able to state a cause of action which is within the subject matter jurisdiction of the court. (*Spencer* v. *Crocker First Nat. Bank* (1948) 86 Cal.App.2d 397, 401, 406 [194 P.2d 775].) A demurrer is also appropriate if the causes of action are not yet ripe. (*Id.,* at pp. 402-403; *Industrial Indemnity Co.* v. *Mazon* (1984) 158 Cal.App.3d 862, 866 [204 Cal.Rptr. 885].) Plaintiff's cause of action relating to the applicability of the DMS-II rate schedule to him is within the exclusive jurisdiction of the PUC and, ultimately, our Supreme Court. His counts relating to damages, injunctive, and other relief for Cal. Ed.'s alleged discrimination against him, and to the constitutionality of sections 739 and 739.5, will not be ripe until the PUC and the Supreme Court have made a final determination as to whether or not the DMS-II schedule applies to him. Thus, none of the causes of action in plaintiff's amended complaint are properly before the court at this time.

DISPOSITION

The judgment is affirmed.

Campbell, P. J., concurred.