102 Cal.Rptr.2d 880 (2001)
85 Cal.App.4th 1369
George W. ECKERT, et al., Plaintiffs and Appellants,
v.
BAY AREA CELLULAR TELEPHONE COMPANY, Defendant and Respondent.
No. A085000.
Court of Appeal, First District, Division Four.
January 8, 2001.
Ordered Not Officially Published May 16, 2001.[*]
*881 Arthur D. Levy, Levy, Ram & Olson LLP, Wayne Lewis Lesser, San Francisco, for Appellants.
Keker & Van Nest, L.L.P., Steven A. Hirsch, San Francisco, for Respondent.
SEPULVEDA, J.
This appeal arises from litigation centering on defendant's alleged practice of failing to disclose discounted wireless telephone rates for customers with impaired hearing. A demurrer without leave to amend was sustained by the trial court on the ground it lacked subject matter jurisdiction over the cause. We agree the threshold jurisdictional question is dispositive and affirm.
The controlling issue may be framed as follows. In a suit under the unfair competition law (UCL) (Bus. & Prof.Code, § 17200 et seq.) based on the Public Utilities Commission's (PUC) authority to regulate disclosures by wireless telecommunications providers to consumers regarding services and rates, how far must the commission have proceeded to exercise its regulatory powers over the subject matter of the lawsuit before jurisdiction to award relief is preempted by section 1759 of the Public Utilities Code?[1],[2] Plaintiffs tell us that lower courts lack jurisdiction to hear cases such as this one only where the effect of the litigation would actually interfere with an existing PUC policy. And, plaintiffs argue, because the commission has not yet proceeded to exercise its regulatory authority over service disclosures to consumers by wireless telecommunications providers, the superior court had jurisdiction to determine their claims for relief under section 2106 and the UCL.
Defendant, on the other hand, argues the preemptive force of section 1759 is broader, extending to circumstances in which the exercise of jurisdiction under section 2106 would "hinder," "frustrate" or "obstruct" an ongoing commission inquiry aimed at formulating policies underlying the subject matter of this lawsuit. Because the commission is currently pursuing rulemaking proceedings into the scope and content of disclosures to consumers by cellular telecommunications providers, defendant contends, our jurisdictionand that of the superior court before usis preempted by section 1759.
Applying an intelligible standard derived from case law that has been uniform over the past twenty-five years, we conclude defendant has the better of the argument. We therefore affirm the order of the trial court sustaining the demurrer to the amended complaint without leave to amend.

I.

BACKGROUND
We draw the facts from the amended complaint. Plaintiffs are George W. Eckert *882 and Larry G. Card. Mr. Eckert's hearing is permanently and substantially impaired; Mr. Card sells and services hearing aids to customers who need them, doing business as American Hearing Aid Center. The two filed an amended complaint for monetary and related class action and equitable relief against defendant and others in January 1998. Defendant is a general partnership composed of cellular telecommunications firms, with its principal place of business in South San Francisco; it does business under the name Cellular One.
The amended complaint alleged that since 1994, defendant has offered to its customers with permanently impaired hearing a rate for cellular telephone services that is significantly below the prevailing commercial rate available to those customers without such impairments. Plaintiffs allege that defendant has failed to distribute notice of its reduced rate (called "Enable-Link") to those who, like Mr. Eckert, are in need of it. Moreover, the amended complaint alleged, as a condition of participation in its Enable-Link plan, defendant has imposed requirements that exceed those established by its tariffs filed with the commission in the exercise of its regulatory authority over wireless telecommunications: the Enable-Link program requires applicants to have a physician's certification that their hearing impairment is such that it cannot be corrected by use of a hearing aid. This requirement, the complaint alleged, is wrongful within the UCL because it violates a predicate enactment, section 2896, requiring disclosure of service terms to consumers.[3] (See Pub.Util.Code, § 2896; Bus. & Prof.Code, § 17200; Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 113, 101 Cal.Rptr. 745, 496 P.2d 817.)

II.

PREEMPTION OF SUBJECT MATTER JURISDICTION UNDER SECTION 1759

A. Prior Authorities.
In San Diego Gas & Electric Co. v. Superior Court (1996) 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 920 P.2d 669 (Covalt), our Supreme Court considered whether a claim for damages and related relief brought against a Southern California public utility by homeowners, stemming from fears that nearby electrical high transmission lines exposed them to the threat of cancer, was preempted by section 1759. The utility had set up that statute as a jurisdictional defense, arguing that the suit was barred by the PUC's statutory jurisdiction to regulate electrical powerlines. The trial court overruled a demurrer to the complaint, but the court of appeal reversed. Granting review, the Supreme Court affirmed the appellate ruling ordering the demurrer sustained without leave to amend. (13 Cal.4th at p. 914, 55 Cal. Rptr.2d 724, 920 P.2d 669.) In a pellucid statement of the governing rule, the Covalt court built on its prior decision in Waters v. Pacific Telephone Co. (1974) 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161. "Under the Waters rule" the court wrote, "an action for damages against a public utility pursuant to section 2106 is barred by section 1759 not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would `reverse, correct, or annul' that order or decision, but also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would `hinder' or `frustrate' or `interfere with' or `obstruct' that policy." (Covalt, supra, 13 Cal.4th at p. 918, 55 Cal.Rptr.2d 724, 920 P.2d 669.)
*883 In a footnote, the Supreme Court said "[o]ther courts have used other synonyms to express the same idea: `The PUC has exclusive jurisdiction over the regulation and control of utilities, and once it has assumed jurisdiction, it cannot be hampered, interfered with, or second-guessed by a concurrent superior court action addressing the same issue.' (Barnett v. Delta Lines, Inc. (1982) 137 Cal. App.3d 674, 681 [187 Cal.Rptr. 219].) Still other synonyms could be invoked, e.g., impair, impede, inhibit, or encumber. The point is clear." (Covalt, supra, 13 Cal.4th at p. 918, fn. 20, 55 Cal.Rptr.2d 724, 920 P.2d 669, italics omitted.) The point is clear. And it can be stated as a rule: A superior court lacks jurisdiction to adjudicate claims for private damages relief against a public utility when factual or legal determinations likely to be required therein would conflict with or undermine ongoing commission efforts to formulate policies within its jurisdiction. Following the Supreme Court's practice in Covalt, supra, 13 Cal.4th at pages 918-923, 55 Cal.Rptr.2d 724, 920 P.2d 669, a review of recent court of appeal precedent illustrates how the rule of subject matter preemption under section 1759 applies in concrete cases.
The opinion in Cellular Plus, Inc. v. Superior Court (1993) 14 Cal.App.4th 1224, 18 Cal.Rptr.2d 308, is an instructive example of circumstances under which judicial jurisdiction is not ousted by section 1759. There, plaintiffs alleged price fixing claims against two cellular telephone service companies, asserting an unlawful antitrust conspiracy in violation of the Cartwright Act (Bus. & Prof.Code, § 16720 et seq.) (See 14 Cal.App.4th at pp. 1242-1247, 18 Cal. Rptr.2d 308.) In sustaining defendants' demurrer to the complaint, the trial court ruled the utilities were immune from Cartwright Act liability because of the PUC's exclusive jurisdiction over utility ratemaking. Relying on the jurisdictional formulation in Waters, supra, 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161, the court of appeal reversed. "We cannot conceive," it wrote, "how a price fixing claim under the Cartwright Act could `hinder or frustrate' the PUC's supervisory or regulatory policies. The only apparent policy of the PUC that could be affected is its regulation of rates charged by cellular telephone service providers. However [plaintiff] does not dispute that the PUC has jurisdiction over rates, nor does it seek any relief requiring the PUC to change any rates it has approved. [Plaintiff] is merely seeking treble damages and injunctive relief for alleged price fixing under the Cartwright Act." (Cellular Plus, Inc. v. Superior Court, supra, 14 Cal.App.4th at p. 1247, 18 Cal.Rptr.2d 308.)
Again, in Stepak v. American Tel. & Tel. Co. (1986) 186 Cal.App.3d 633, 231 Cal. Rptr. 37, plaintiffs were minority shareholders of a public utility that had merged with another utility. Alleging the merger was unfair to them, plaintiffs sought declaratory relief and an injunction halting the merger. The utilities moved to dismiss, asserting the commission not only had exclusive jurisdiction to approve the merger, but in administrative proceedings had determined that it was fair to minority shareholders. Reversing a trial court order dismissing the suit on jurisdictional grounds, the court of appeal relied, in this pre-Covalt decision, on Waters, supra, 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161: "Our case is distinguishable from Waters and other cases where the subject of the superior court action is addressed by commission regulation. [Citations.] We are aware of no `declared supervisory and regulatory policies' . . . ever formulated or relied on by the commission on the subject of safeguarding minority investor interests. Applying the Waters test of jurisdiction, we cannot conceive of how the superior court's award of damages or other relief to wronged minority shareholders would `hinder or frustrate' . . . declared commission policy." (Stepak v. American Tel. & Tel. Co., supra, 186 Cal.App.3d 633 at pp. 640-641, 231 Cal.Rptr. 37.)
Recently, in Wise v. Pacific Gas & Electric Co. (1999) 77 Cal.App.4th 287, 91 Cal. *884 Rptr.2d 479 (Wise), Division Five of this court reviewed an appeal in a suit by electricity customers alleging a public utility had defrauded consumers of some $42.2 million in rate increases imposed to finance the replacement of gas heaters that lacked internal pressure valves. Reversing the trial court's order sustaining a demurrer to the complaint, the court of appeal held the superior court's subject matter jurisdiction under section 2106 was not preempted by section 1759. (See Wise, supra, 77 Cal. App.4th, at pp. 291-292, 91 Cal.Rptr.2d 479.) The utility had argued that because the suit interfered with the PUC's ratemaking authority, it was preempted. "However," the court of appeal wrote, plaintiffs "disclaim any challenge to the PUC's established rates. In essence, [plaintiffs] contend [the utility] failed to provide the services . . . for which [plaintiffs] were charged. [The utility] does not cite, and the record does not contain any evidence of any existing regulation or policy of the PUC which might be impeded if [plaintiffs] action proceeds. The claim that [the utility] charged for services it failed to deliver does not interfere, hamper, hinder, frustrate or otherwise impede any supervisory or regulatory PUC policy." (Id. at p. 295, 91 Cal.Rptr.2d 479.)
The rule to be derived from this line of cases was encapsulated by the high court in Covalt, supra, 13 Cal.4th at pp. 918-919, 55 Cal.Rptr.2d 724, 920 P.2d 669: "When the bar raised against a private damages action has been a ruling of the commission on a single matter such as its approval of a tariff or a merger, the courts have tended to hold that the action would not `hinder' a `policy' of the commission within the meaning of Waters and hence may proceed." On the other side of the line lie those cases holding superior court jurisdiction is preempted by section 1759 under identifiable circumstances.
For example, Schell v. Southern Cal. Edison Co. (1988) 204 Cal.App.3d 1039, 251 Cal.Rptr. 667, involved legislation requiring the commission to establish so-called "baseline" quantities of natural gas and electricity for residential distribution at below market rates. Plaintiff sued the utility for damages and declaratory relief, contending that as the owner of a recreational vehicle (RV) park he was entitled to purchase and distribute gas and electricity to his tenants at baseline rates. In prior proceedings under the statute, the commission had designated baseline quantities on an interim basis, ruling the statutory term "residential customer" did not include transient trailer parks such as plaintiffs. Affirming the trial court's sustention of a demurrer without leave to amend, the appellate court took judicial notice of administrative matters pending on the commission's docket challenging the rate classification for baseline quantities and the exemption of RV parks. (Id. at p. 1045, 251 Cal.Rptr. 667.) Noting the commission had directed the defendant public utility to conduct a study of the need for and feasibility of changes in tariff rates, the court concluded that the "decision as to whether or not master-metered residential recreational vehicle parks should be charged at the same rate as [similar] mobilehome parks . . . is clearly within the exclusive purview of the PUC as part of its continuing jurisdiction over rate making and rate regulation in provision of baseline service to residential customers of the electric and gas corporations." (Id. at p. 1046, 251 Cal.Rptr. 667.)
In Brian T. v. Pacific Bell (1989) 210 Cal.App.3d 894, 258 Cal.Rptr. 707, this court affirmed dismissal of a suit by parents seeking damages and injunctive relief requiring telephone companies to adopt a specific technology (customer access codes) to restrict minors' access to sexually explicit messages. Because the commission had held hearings on the issue and was pursuing an ongoing investigation into the optimal means of restricting such access by minors, section 1759 applied to preempt the courts from exercising jurisdiction over litigation aimed at producing the same result.[4] (Id. at p. 907, 258 Cal.Rptr. 707.) *885 The Covalt opinion formulated the rule expressed in this latter line of cases as being one in which "the relief sought would have interfered with a broad and continuing supervisory or regulatory program of the commission, [and] the courts have found such a hindrance and barred the action under section 1759." (Covalt, supra, 13 Cal.4th at p. 919, 55 Cal.Rptr.2d 724, 920 P.2d 669.)[5]

B. Applying Preemption Principles in this Case.
Before applying these precedents and the rules they formulate to the record in this case, we first observe that on February 3, 2000, the commission publicly released notice of its decision to initiate rulemaking proceedings establishing what the release calls a "Telecommunications Consumer Protection Bill of Rights" (Cal. P.U.C. News Release (Feb. 3, 2000) CPUC 011 (bill of rights)). In response to this event, plaintiffs argue that the commission's press release and the staff report and recommendations accompanying it (Cal. P.U.C. Report (Feb. 3, 2000) Consumer Protections for a Competitive Telecommunications Industry, Telecommunications Division Staff Report and Recommendations (report))copies of which defendant has filed with the court are not subject to judicial notice and, even if they were noticeable, fall short of demonstrating an existing regulatory policy of the commission. Neither argument persuades. Under Evidence Code section 452, a court may take judicial notice of official acts and records of the executive branch, of which the PUC is a part. (See, e.g., Schell v. Southern California Edison Co., supra, 204 Cal.App.3d at p. 1043, fn. 2, 251 Cal.Rptr. 667.)
The February 3d release is the latest episode in a lengthy commission history of regulating mobile telecommunications and its providers going back to 1962, when the commission adopted general order 96-A. That order promulgated rules governing the filing and posting of rate schedules, rules, and related contracts by public utilitiesincluding telecommunications utilitiesunder the commission's jurisdiction. As part of the general order, section II. C.(4) required utilities to issue general rules covering the application of rates, charges, and services, including a description of services, the procedures necessary to maintain service, optional services available and their cost, methods of measuring service, and like matters.
Thereafter, in In re Mobile Telephone Service and Wireless Communications (Cal.P.U.C.1996) 174 Pub.Util.Rep.4th (West) 543 (Decision 96-12-071), the commission adopted an interim order addressing its regulatory jurisdiction over wireless services, also known as "commercial mobile radio service" (CMRS) providers, in the wake of congressional legislation barring state regulation of the rates charged by, and market entry of, such carriers. (47 U.S.C. § 332(c)(3).) In ruling that CMRS providers no longer were required to file tariffs with it, the commission reasoned that "a more effective way to exercise our remaining regulatory responsibilities over CMRS providers in lieu of imposing tariff filings is to expeditiously adopt a set of consumer protection rules applicable to CMRS providers. We shall shortly issue for comment in this docket a procedural ruling to address consumer protection rules relative to CMRS consumer complaints, billing disputes, and related *886 CMRS matters remaining under our jurisdiction. [¶] In order to provide for regulatory continuity between now and the time we adopt a set of consumer protection rules applicable to CMRS providers, as an interim measure, we shall continue to enforce each CMRS provider's existing consumer protection rules. By existing consumer protection rules, we refer to those categories of rules summarized in G[eneral] O[rder] 96-A, Section II.C.(4). . . . We shall apply these existing rule provisions in dealing with any CMRS consumer complaints or billing disputes that come before us during this interim period."
These materials comprise the regulatory background against which the commission issued its consumer protection bill of rights release and accompanying report of February 3, 2000. The latter document, prepared by its telecommunications division staff for review and action by the commission, recommends an extensive overhaul of the interim regulatory provisions set forth in section II of general order 96-A. Entitled "Consumer Protections for a Competitive Telecommunications Industry," the report's introductory section explains that "[telecommunications consumer problems exist which require the California [PUC] to take action at this time. Consumer protections for customers of wireless sendees ordered in D.XX-XX-XXX [discussed ante] have yet to be established, and too many historical rules and procedures have been accumulated that have become ineffectual in protecting consumers."[6]
Specific recommendations set forth in the report include (1) establishing consumer protection rules; (2) applying such rules to wireless providers as described in the D.XX-XX-XXX case; (3) substituting consumer protection rules for existing service tariffs in fully competitive utilities; and (4) reviewing current limitations of liability of public utilities as they impact consumer protection. Enough can be garnered, we think, from this brief review of the commission's current posture in the area covered by plaintiffs' amended complaint to make it clear that the superior court was right when it concluded it lacked jurisdiction over the subject matter of this lawsuit. While defendant argues this lawsuit would interfere with existing commission policies regarding customer disclosures by wireless providers, we need not decide that question. Under the precedents discussed above, it is sufficient for resolution of the jurisdictional issue that the commission has noticed its intention to engage in rulemaking proceedings that will likely impact directly the subject matter of this lawsuitconsumer protection for wireless users, including the hearing impaired.
The analogies between the administrative posture of the consumer protection issue presented in this case and public concern over possible health dangers presented by powerline electric and magnetic fields discussed in Covalt, supra, 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 920 P.2d 669, are sufficiently striking that one can be paraphrased using the other. As in the powerlines case, so here the commission's staff has assembled a report and recommendations regarding issues surrounding consumer protection for wireless customers (id. at p. 927, 55 Cal.Rptr.2d 724, 920 P.2d 669); the commission itself has instituted interim rules for wireless providers pending formulation of permanent regulations (id. at p. 929, 55 Cal. Rptr.2d 724, 920 P.2d 669); has taken steps to develop a formal regulatory policy on issues affecting the protection of consumers of wireless services (id. at p. 928, 55 Cal.Rptr.2d 724, 920 P.2d 669); has declared a need for a uniform consumer protection policy affecting the entire wireless industry (id. at p. 932, 55 Cal.Rptr.2d 724, 920 P.2d 669); and has set up and involved informal working groups of industry representatives (ibid.). The commission is, in short, "still actively pursuing the broad policy inquiry into [consumer protection *887 in wireless services] that it initiated in 19[96]." (Id. at p. 934, 55 Cal.Rptr.2d 724, 920 P.2d 669.) Given that administrative posture, we agree with the trial court's conclusion that it lacked subject matter jurisdiction over plaintiffs' action.[7]
The judgment of the superior court is affirmed.
REARDON, Acting P.J., and WOOLARD, J.[**], concur.
NOTES
[*] The Supreme Court ordered that the opinion be not officially published. (See California Rules of Court, Rules 976 and 977.)
[1] All further statutory' references are to the Public Utilities Code unless otherwise indicated.
[2] Two complementary provisions of the Public Utilities Code are involved. First, section 2106 provides in full: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damages, or injury may be brought in any court of competent jurisdiction by any corporation or person. [11] No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt." Second, as relevant here, section 1759 provides: "No court of this State, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties. . . ."
[3] As pertinent here, that statute provides "The Commission shall require telephone corporations to provide customer service to telecommunications customers that includes, but is not limited to, all the following: [¶] (a) Sufficient information upon which to make informed choices among telecommunications services and providers. This includes, but is not limited to, information regarding the provider's identity, service options, pricing, and terms and conditions of service. . . ."
[4] The issue may again be before California's high court. (See Hartwell v. Superior Court (1999) 74 Cal.App.4th 837, 88 Cal.Rptr.2d 486, review granted Dec. 15, 1999, S082782.)
[5] Although not raised specifically by plaintiffs, we conclude that the fact this action is brought under section 17200 of the UCL (Bus. & Prof.Code, § 17200 et seq.) rather than directly under section 2106 is a distinction without a difference, at least for jurisdictional purposes. As the high court held in Rubin v. Green (1993) 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044, litigants may not "in effect, `plead around' absolute barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute." (Id. at p. 1201, 17 Cal.Rptr.2d 828, 847 P.2d 1044; see also Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 182, 83 Cal.Rptr.2d 548, 973 P.2d 527.)
[6] The report discusses complaints by wireless users of service, disclosure, and price abuses by cellular providers, including the defendant in this case.
[7] In the third cause of action of the amended complaint, Mr. Eckert seeks enforcement of defendant's Enable-Link plan as embodied in its tariff. But this essential contract claim fails as a matter of law. Plaintiffs admitted Eckert never sought the reduced Enable-Link rate by completing the required application. In any event, we think defendant's definition of "permanent hearing disability" as a hearing impairment not correctable by use of a hearing aid is not, as plaintiffs claim, arbitrary or capricious. (Cf. Sutton v. United Air Lines, Inc. (1999) 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450; Murphy v. United Parcel Service (1999) 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 [myopia and hypertension correctable with eyeglasses and medication do not qualify as "disabilities" within the meaning of Americans with Disabilities Act].)
[**] Judge of the San Francisco Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.