116 Cal.Rptr.2d 562 (2002)
95 Cal.App.4th 1389
PACIFIC GAS AND ELECTRIC COMPANY, Petitioner,
v.
The SUPERIOR COURT of Sonoma County, Respondent,
John Emery et al., Real Parties in Interest.
No. A093509.
Court of Appeal, First District, Division Four.
February 7, 2002.
Review Granted May 1, 2002.
*563 Sonoma County Superior Court; Laurence K. Sawyer.
Attorneys for Petitioner, Pacific Gas and Electric Company: Severson & Werson, William L. Stern, Law Offices of Rita F. Gilmore, Rita F. Gilmore.
Attorneys for Real Parties in Interest, John Emery et al.: Law Offices of Colin C. Claxon, Colin C. Claxon, Barri Kaplan Boncepart.
SEPULVEDA, J.
Petitioner herein and defendant below, a public utility, applies for a writ of mandate directing the Sonoma County Superior Court to dismiss plaintiffs' fourth cause of action for injunctive and related relief under the unfair competition law (UCL); (see Bus. & Prof.Code, § 17200 et seq.). Petitioner contends the superior court's subject matter jurisdiction over the fourth cause of action is ousted by section 1759 of the Public Utilities Code (§ 1759), preempting the exercise of judicial jurisdiction to review any order or decision of the California Public Utilities Commission. We granted an alternative writ, ordered briefing, and heard oral argument. Having determined the trial court lacks subject matter jurisdiction to adjudicate the fourth cause of action alleged in plaintiffs' first amended complaint, we now grant the relief sought, directing the superior court to enter an order dismissing with prejudice that claim for relief.

BACKGROUND
Real parties John Emery and Jeffrey Caldeway, plaintiffs below, own unimproved land in Sonoma and Napa Counties. In their underlying superior court action, they alleged that on July 31, 1996, trees and vegetation on their respective parcels were destroyed by a fire caused by contact between high tension powerlines owned by petitioner and a cluster of bay trees. The powerline/tree contact ignited the so-called "Cavedale fire," so named because it originated on a steep slope off Cavedale Avenue in Glen Ellen. The fire spread south, covering almost 2,100 acres along a ridgeline separating Napa and Sonoma Counties. According to the allegations of plaintiffs' first amended complaint, their properties suffered extensive fire damage from the Cavedale conflagration, burning over 170 acres.
In July 1999, plaintiffs filed a four-count amended complaint against petitioner for damages in tort and specific relief under the UCL. In addition to claims for tort damages pleaded in the first three causes of action, the fourth cause of action seeks an injunction against petitioner requiring it to cease its alleged wrongful business practice of diverting funds appropriated for tree-trimming and vegetation control programs, as well as restitutionary relief to the general public for these alleged diversions. In brief, plaintiffs contend defendant systematically substantially under-spent *564 funds budgeted for tree-trimming (also referred to as tree-line clearances) and related vegetation control activities, using those monies for other purposes unrelated to the earmarked activities.[1] A causal upshot of this underspending scheme, plaintiffs allege, was the uncontrolled growth of trees and other vegetation along the paths of high tension electrical transmission lines, leading to a heightened potential for wildfires from contact between the powerlines and encroaching trees and vegetation and, among other untoward events, the Cavedale fire of 1996.
Plaintiffs' suit was filed a week after the conclusion of a year-long investigation and hearings prosecuted before the Public Utilities Commission (PUC) by that agency's Consumer Services Division (CSD). We glean from the record before us that those adjudicatory proceedings, captioned "Investigation on the Commission's Own Motion into the Operations and Practices of the Pacific Gas and Electric Company in Connection with Public Utilities Code Section 451, General Order 95 and Other Applicable Standards Governing Tree Line Clearances" (the Tree-Line Clearances Proceedings) were instituted to inquire into CSD allegations that defendant utility had failed to meet tree-line clearance and vegetation management and control requirements imposed by statute and commission regulations.[2] In addition, the Tree Line Clearances Proceedings addressed CSD allegations the utility had failed to comply with commission requirements regarding accounting for expenditures of tree trimming and vegetation control funds made available under an assembly bill. The commission also decided to address the issue of what, if any, sanctions should be imposed against the utility if the allegations of underspending and associated misconduct were sustained.
At the end of a week of evidentiary hearings, the commission suspended proceedings after the utility, CSD, and two private parties to the Tree-Line Clearances Proceedings indicated they had reached a proposed agreement to settle the matter. As described in the commission's opinion filed in the proceedings approving the settlement, the agreement includes both specific and monetary relief. The commission's opinion characterized the settlement as requiring the utility's "shareholders [to] fund up to $22.7 million in vegetation-related activities over the next five years and make an immediate, one-time $6 million contribution to the California general fund." The commission's description of the terms of the settlement agreement continues:
"The settlement places on PG & E shareholders up to $28.7 million in future expenditures spread across five cost categories: (1) $5 million over a five year period for public safety programs and activities; (2) up to $3.6 million over a threeto five-year period for PG & E's quality assurance program and a CSD-managed monitoring and inspection program; (3) $14 million over a three-year period for tree removal and replacement; (4) $6 million as a one-time contribution to the State general fund; and (5) up to $100,000 reimbursement to CSD for consultant costs incurred in connection with this proceeding. In addition to these pecuniary provisions, the settlement establishes protocols for three different levels of tree and vegetation clearance noncompliance and requires PG & E to establish an electronic *565 database for customers who refuse PG & E permission to trim trees on their property."
In the parallel superior court litigation, defendant's demurrer to and motion to strike the fourth cause of action of plaintiffs' amended complaint on jurisdictional grounds was denied, the trial court commenting the issue presented thereby "raise[d] important issues of law such that immediate review of that cause of action via writ of mandate would benefit the parties and the trial court." Defendant then applied to us for interlocutory relief.

ANALYSIS
After more than two decades of comparative quiescence, the jurisprudence of preemption under section 1759[3] has of late produced a wavelet of litigation, including a major opinion from the California Supreme Court construing the contours of the preemption statute (San Diego Gas & Electric Co. v. Superior Court (Covalt) (1996) 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 920 P.2d 669 (Covalt)) and, more recently, grants of review by the high court in two cases arising under section 1759 decided by the Court of Appeal, one of them by this Division. (Hartwell Corp. v. Superior Court (1999) 74 Cal.App.4th 837, 88 Cal. Rptr.2d 486, review granted Dec. 15, 1999, S082782; People ex rel. Orloff v. Pacific Bell Telephone Co. (2001) 89 Cal.App.4th 844, 108 Cal.Rptr.2d 48, review granted Sept. 26, 2001, S099131.)
In Covalt, supra, 13 Cal.4th 893, 55 Cal. Rptr.2d 724, 920 P.2d 669, our Supreme Court considered whether a claim for damages and related relief brought against a public utility by homeowners, stemming from fears that nearby electrical high transmission lines exposed them to the threat of cancer, was preempted by section 1759. The utility had set up the statute as a jurisdictional defense, arguing the suit was barred by the commission's statutory jurisdiction to regulate electrical powerlines. The trial court overruled a demurrer to the complaint, but the Court of Appeal reversed. Granting review, the Supreme Court affirmed the appellate ruling ordering the demurrer sustained without leave to amend. (Covalt, supra, 13 Cal.4th at p. 914, 55 Cal.Rptr.2d 724, 920 P.2d 669.) Building on its prior decision in Waters v. Pacific Telephone Co. (1974) 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161, the Covalt court wrote "[u]nder the Waters rule . . . an action for damages against a public utility . . . is barred by section 1759 . . . when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would 'reverse, correct, or annul' that order or decision, [and] also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would `hinder' or `frustrate' or `interfere with' or `obstruct' that policy." (Covalt, supra, 13 Cal.4th at p. 918, 55 Cal.Rptr.2d 724, 920 P.2d 669, fn. omitted.)
The opinion in Schell v. Southern Cal. Edison Co. (1988) 204 Cal.App.3d 1039, 251 Cal.Rptr. 667 (Schell), is an example of circumstances under which judicial jurisdiction is preempted by section 1759. That litigation involved legislation requiring the commission to establish so-called *566 "baseline" quantities of natural gas and electricity for residential distribution at below market rates. Plaintiff sued the utility for damages and declaratory relief, contending that as the owner of a recreational vehicle park he was entitled to purchase and distribute gas and electricity to his tenants at baseline rates. In prior proceedings under the statute, the commission had designated baseline quantities on an interim basis, ruling the statutory term "residential customer" did not include transient trailer parks such as plaintiffs. Affirming the trial court's sustaining of a demurrer without leave to amend, the Court of Appeal took judicial notice of administrative matters pending on the commission's docket challenging the rate classification for baseline quantities and the exemption of recreational vehicle parks. (Schell, supra, 204 Cal.App.3d 1039 at p. 1045, 251 Cal.Rptr. 667.) Noting the commission had directed the defendant public utility to conduct a study of the need for and feasibility of changes in tariff rates, the court concluded that the "decision as to whether or not master-metered residential recreational vehicle parks should be charged at the same rate as [similar] master-metered mobile-home parks . . . is clearly within the exclusive purview of the PUC as part of its continuing jurisdiction over rate making and rate regulation in provision of baseline service to residential customers of the electric and gas corporations." (Id. at p. 1046, 251 Cal.Rptr. 667.)
Similarly, in Brian T. v. Pacific Bell (1989) 210 Cal.App.3d 894, 258 Cal.Rptr. 707, this court affirmed dismissal of a suit by parents seeking damages and injunctive relief requiring telephone companies to adopt a specific technology (customer access codes) to restrict minors' access to sexually explicit messages. Because the commission had held hearings on the issue and was pursuing an ongoing investigation into the optimal means of restricting such access by minors, section 1759 applied to preempt the courts from exercising jurisdiction over litigation aimed at producing the same result. (Brian T. v. Pacific Bell, supra, 210 Cal.App.3d 894 at p. 907, 258 Cal.Rptr. 707.) The Covalt opinion formulated the rule expressed in this line of cases as being one in which "the relief sought would have interfered with a broad and continuing supervisory or regulatory program of the commission, [and] the courts have found such a hindrance and barred the action under section 1759." (Covalt, supra, 13 Cal.4th at p. 919, 55 Cal.Rptr.2d 724, 920 P.2d 669, italics added.)
It is not difficult to foresee that in this litigation factual and legal conflicts with the settlement approved by the commission and its terms are, if anything, even more likely to arise than they were in Covalt, supra, 13 Cal.4th 893, 55 Cal. Rptr.2d 724, 920 P.2d 669. Here, the commission is not engaged in preliminary rulemaking as in Covalt, but in actually adjudicating concrete claims for relief against the utility growing out of the same treetrimming practices attacked by plaintiffs in their complaint. The legal and factual issues before the commission in the treetrimming adjudicatory proceedings described above are, in other words, identical to those presented to the superior court by plaintiffs' fourth cause of action under the UCL. Plaintiffs' UCL claim for relief thus falls within the literal language of § 1759, as a proceeding in which the trial court exercised "jurisdiction to . . . reverse, correct, or annul [an] order or decision of the commission ...." (§ 1759, subd. (a).)
The decisive feature of this case, in other words, lies in the fact that specific adjudicatory proceedings before the commission raising the identical challenges to *567 the utility's tree-trimming practices and seeking comparable remedies have already taken place. The potential for conflict and contradiction arising from such parallel proceedings is manifest for, as the Court of Appeal wrote in a case addressing § 1759 preemption, Pratt v. Coast Trucking, Inc. (1964) 228 Cal.App.2d 139, 39 Cal.Rptr. 332, "no sensible person . . . should for a moment contend that there is an area within which the commission and the courts can legitimately reach exactly opposite and conflicting conclusions on a given set of facts." (Id. at p. 149, 39 Cal.Rptr. 332; quoted with approval in Waters, supra, 12 Cal.3d at p. 11, 114 Cal.Rptr. 753, 523 P.2d 1161.)
Indeed, this "direct-conflict" species of regulatory preemption under which section 1759 operates to deprive a trial court of subject matter jurisdiction to decide the same claims pending before or determined by the commission in adjudicatory proceedings antedates the more expansive "interference" formulation adopted by the court in Waters, supra, 12 Cal.3d at page 4, 114 Cal.Rptr. 753, 523 P.2d 1161 and reaffirmed in Covalt, supra, 13 Cal.4th at pages 918-919, 55 Cal.Rptr.2d 724, 920 P.2d 669. (E.g., Miller v. Railroad Commission (1937) 9 Cal.2d 190, 197, 70 P.2d 164 [after water company was declared a public utility by the trial court which set its rates, the commission set different rates at petitioner's request; the trial court then held utility in contempt, ruling the commission acted without jurisdiction; commission then set a higher rate and petitioner sought review. Held: trial court lost jurisdiction after the commission acted; "upon [the commission's] assumption of jurisdiction over the activities of [the] utility, any order or judgment of the superior court in conflict with the orders of the commission is to that extent ineffective and of no binding effect...."]; Pacific Tel. & Tel. Co. v. Superior Court (Sokol) (1963) 60 Cal.2d 426, 430, 34 Cal.Rptr. 673, 386 P.2d 233 [prohibition by utility to bar superior court from proceeding to trial on customer's claim of wrongful termination of service. Held: prior commission ruling utility did not act wrongfully in terminating service ousted court's subject matter jurisdiction. "The mandate of the Legislature, violated by the superior court . . . is to place the commission, insofar as the state courts are concerned, in a position where it may not be hampered in the performance of any official act by any court, except to the extent and in the manner specified in the code itself.... ¶ . . . Respondent [superior court] was therefore without jurisdiction to pass upon the question here presented"]; People ex rel. Public Util. Com. v. Ryerson (1966) 241 Cal.App.2d 115, 122, 50 Cal.Rptr. 246 [after commission determined carrier had undercharged customer and directed it to recover uncollected revenue, carrier sued customer; parties stipulated freight bills should be reformed to reflect their rate agreement and judgment entered thereon; commission then sued to vacate judgment. Held: "the judgment [of reformation] constituted, in effect, a judgment reviewing and annulling the order of the commission and, hence, was in excess of the court's jurisdiction," citing Pratt, supra, 228 Cal. App.2d 139, 39 Cal.Rptr. 332].)
Plaintiffs' rebuttal to this reasoning is to point out that the Tree Line Clearances Proceedings before the commission were terminated by the settlement agreement, a fact that removes any potential for conflict between the parallel administrative and judicial proceedings, according to plaintiffs. But this is simply wrong, and for at least two reasons. First, notwithstanding the settlement, the commission's exercise of subject matter jurisdiction arising out of those proceedings and its approval of what is in substance a form of equitable relief *568 for utility ratepayers has not been concluded. Not only does the agreement commit the utility to the implementation of "vegetation-related safety programs" over a five-year period, but also the CSD has retained jurisdiction expressly to monitor the utility's operations under the terms of the PUC-approved settlement. The utility is required by the agreement to submit monthly compliance reports to CSD "of all tree trimming calls and the resolution of the same." And, to the extent CSD is able to identify "a pattern of nonconformance" with the terms of the agreement, it "reserves the right to request that the Commission initiate an investigation."[4]
Given these features of the settlement, continued prosecution of plaintiffs' fourth cause of action in the superior court proceedings leading to the entry of some form of specific relief could easily lead to a situation in which substantial conflicts arise because of differing requirements placed on the utility by two different tribunals purporting to exercise jurisdiction over it with respect to the same allegations of misconduct and wrongdoing. It is in situations presenting the likelihood of just such institutional collisions that section 1759 operates to deprive a trial court of subject matter jurisdiction to decide the same claims pending before the commission.[5]
Second, from the Waters court's expansive formulation of the "interference" trigger of the preemption statute onwardto and including its reaffirmation in Covaltcase law under section 1759 is equally clear that judicial proceedings with the potential to interfere with "established policies" of the PUC are also preempted. (See, e.g., Waters, supra, 12 Cal.3d at p. 10, 114 Cal.Rptr. 753, 523 P.2d 1161 ["It stands undisputed that the commission has approved a general policy of limiting the liability of telephone utilities for ordinary negligence to a specified credit allowance, and has relied upon the validity and effect of that policy in exercising its rate-making *569 functions. [Citation.] It also appears clear that to entertain suits such as plaintiffs action . . . and authorize a substantial recovery . . . would thwart the foregoing policy. That being so, the express language of section 1759 . . . bars plaintiffs action" (italics added)].)
Subsequent Court of Appeal rulings under § 1759 have, of course, applied the broadly framed Waters/Covalt interference standard to support a finding of preemption, concluding that judicial subject matter jurisdiction is ousted not only when its exercise would "reverse" a commission decision, but when it might thwart a general policy adopted by the commission. The decision of Division Three of this court in Ford v. Pacific Gas & Electric Co. (1997) 60 Cal.App.4th 696, 70 Cal.Rptr.2d 359, is illustrative of this line of cases. There the widow of a Pacific Gas & Electric Co. employee who had succumbed to brain cancer sued the utility, contending that years of working in proximity to electric powerlines and routine exposure to surrounding electric and magnetic fields had caused his illness and death. The trial court sustained a demurrer by the defendant utility and plaintiff appealed. Division Three of this court affirmed the judgment for the utility on § 1759 preemption grounds.
Relying on the analysis of Covalt, supra, 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 920 P.2d 669, the Ford court reasoned that to permit an award of damages to be made on plaintiffs theory of tort liability "`would plainly undermine the commission's policy by holding the utility liable for not doing what the commission has repeatedly determined that it and all similarly situated utilities were not required to do.'" (Ford v. Pacific Gas & Electric Co., supra, 60 Cal.App.4th 696 at p. 704, 70 Cal.Rptr.2d 359, quoting Covalt, supra, 13 Cal.4th at p. 950, 55 Cal.Rptr.2d 724, 920 P.2d 669; see also Los Angeles Cellular Telephone Co. v. Superior Court (1998) 65 Cal.App.4th 1013, 1018, 76 Cal.Rptr.2d 894 [tort suit against telephone service provider for injuries sustained in beating after cellular telephone failed barred by tariff liability limitations approved by commission]; Schell, supra, 204 Cal.App.3d 1039, 251 Cal.Rptr. 667 [suit against utility for damages for alleged overcharging for gas and electricity barred by § 1759 in view of parallel commission ratemaking investigation of same issue]; and Brian T. v. Pacific Bell, supra, 210 Cal.App.3d 894, 258 Cal.Rptr. 707 [suit to require telephone utility to adopt specific technology restricting access to sexually explicit messages barred by § 1759 in view of commission's ongoing investigation into optimal means of restricting access by minors].) Like concerns are present here. To the extent the superior court might enter an equitable decree against petitioner founded on plaintiffs' fourth cause of action, such a judgment would present the clear potential to interfere with commission policies embodied in the settlement agreement concluding the Tree Line Clearances Proceedings. Such interference is preempted, we hold, by the provisions of § 1759.

CONCLUSION
Let a peremptory writ of mandate issue directing the Superior Court of California, County of Solano, to set aside and vacate its order filed on or about December 11, 2000, in the case of John and Deborah May Emery and Jeffrey Caldeway v. Pacific Gas & Electric Company et alia (Super. Ct. Sonoma County, 2000, No. SCV 223580) denying defendant Pacific Gas & Electric Company's demurrer to and motion to strike the fourth cause of action of plaintiffs' first amended complaint and to enter a new order sustaining the demurrer *570 to and granting the motion to strike the fourth cause of action.
The parties shall bear their own costs of this proceeding. (California Rules of Court, rule 56.4.)
This opinion is final as to this court immediately. (Cal. Rules of Court, rule 24(d).)
We concur: KAY, P.J., and REARDON, J.
NOTES
[1] The record indicates the annual budget line item at issue is on the order of $60 million to $70 million.
[2] We judicially notice the proceedings before the commission. (Evid.Code, § 452.)
[3] Section 1759 provides, "(a) No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court. [¶] (b) The writ of mandamus shall lie from the Supreme Court and from the court of appeal to the commission in all proper cases."
[4] We note here two additional features of the settlement. First, the agreement imposes equitable-like remedies against the utility, requiring it to "enact vegetation-related public safety programs and activities," at a cost of $5 million over five years; second, the agreement vests "exclusive jurisdiction" in the commission "over any issues related to the interpretation of this Settlement and . . . no other court, regulatory agency, or other governing body shall have jurisdiction over any issue related to the interpretation of this Settlement, the enforcement of the Settlement, or the right of the Parties to the Settlement, except for judicial review of any Commission decision in this proceeding."
[5] And it is this feature of the case that distinguishes it from Wise v. Pacific Gas & Electric Co. (1999) 77 Cal.App.4th 287, 91 Cal.Rptr.2d 479, on which plaintiffs rely, both in briefing and at oral argument. While the pattern of "underspending" by the utility at issue here is similar to the conduct at issue in Wise (there, the utility ceased replacing defective residential gas regulators for which funds had been appropriated), that similarity is insufficient, standing alone, to produce the same result. Unlike the administrative posture of this case, in Wise, the commission had not held hearings or concluded an investigation with a settlement incorporating injunctive relief features, as it has done in this case. What it had done at the time Wise was decided was to order the CSD to advise the commission "`if an order instituting an investigation is needed to determine whether [PG & E] engaged in fraudulent conduct....'" (Id. at p. 297, 91 Cal.Rptr.2d 479.) It was, moreover, in light of that order of the commission that the Wise court held the doctrine of primary jurisdiction applied, requiring a stay of the lawsuit pending possibly concurrent administrative action before the commission. (Id. at p. 300, 91 Cal.Rptr.2d 479.) Thus, despite a determination that the lawsuit was not preempted by section 1759, the Wise court nevertheless ordered further proceedings in the trial court stayed. The difference in outcomes obviously turns on the status of matters before the commission.