[Civ. No. 64418. Second Dist., Div. Three. Nov. 23, 1982.]

TROY BARNETT, Plaintiff and Appellant, v.
DELTA LINES, INC., Defendant and Respondent.

**COUNSEL**

Ellis & Kingston and Malcolm G. Ellis for Plaintiff and Appellant.

Littler, Mendelson, Fastiff & Tichy, George J. Tichy II, Michael B. Margolis and Alan S. Levins for Defendant and Respondent.

**OPINION**

**O'BRIEN, J.***—This is an appeal from judgment following an order granting summary judgment for defendant on the grounds of lack of jurisdiction of the superior court.

---

*Assigned by the Chairperson of the Judicial Council.

## FACTS

The record is somewhat confusing because only the answer to the original complaint is present, whereas the operative complaint in this record is the second amended complaint. Not only is the record lacking a description of who are the plaintiffs, there is no way of ascertaining precisely what respondent denied or admitted in its answer. The briefs are of little help. Respondent's brief refers to and discusses certain paragraphs of "The Third Cause of Action in the complaint dated February 5, 1976," yet that complaint is not part of the record. The "stipulation to amend complaint" filed July 31, 1979, is of little help except to note that the "amended complaint shall be deemed answered with a full denial and with all applicable affirmative defenses." No one knows what the "applicable affirmative defenses" are. Also, the stipulation refers to additions to the "third cause of action" and to certain pages and lines, none of which are reflected in the record. One could surmise that the "Second Amended Complaint" filed July 31, 1979, one day after the stipulation to amend complaint was fully executed, was meant to supplant the original complaint, or the first amended complaint, if one exists, and, further, that the affirmative defenses set forth in the answer to the original complaint, filed December 31, 1977, are the "applicable affirmative defenses." In any event we proceed to review the judgment based on that surmise.

Troy Barnett (appellant)[1] filed the within action against Delta Lines, Inc. (respondent) alleging damages arising from the illegal closing of one of respondent's divisions, thereby causing the unemployment and loss of seniority of appellant as an employee of the division. It is alleged that the closing of the division violated Public Utilities Code sections 451, 491, and 851.[2]

---

[1]Appellant asserts that there are "287 named parties out of approximately 400 employees" yet there is nothing in the record showing that or who they are. The second amended complaint lists only Troy Barnett as plaintiff even though the body of the complaint refers to plaintiffs without description. Nevertheless, only Troy Barnett appeals here.

[2]These sections read in part as follows: [§ 451.] "Every public utility shall furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities, including telephone facilities, as defined in Section 54.1 of the Civil Code, as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public.

[§ 491.] "Unless the commission otherwise orders, no change shall be made by any public utility in any rate or classification, or in any rule or contract relating to or affecting any rate, classification, or service, or in any privilege or facility, except after 30 days' notice to the commission and to the public. Such notice shall be given by filing with the commission and keeping open for public inspection new schedules stating plainly the changes to be made in the schedule or schedules then in force, and the time when the changes will go into effect. The commission, for good cause shown, may allow changes without requiring the 30 days' notice, by an order specifying the changes so to be made, the time when they shall take effect, and the manner in which they shall be filed and published. When any change is proposed in any rate or classification, or in any form of contract or agreement or in any rule or contract relating to or affecting any rate, classification, or service, or in any privilege or facility, attention shall be directed to such change on the schedule filed with the commission, by some character to be designated by

In June 1974 respondent, a highway common carrier with a California Public Utilities Commission (PUC) certificate of public convenience and necessity, entered into a tentative agreement to purchase Alltrans Express California, Inc. (Alltrans), also a holder of such a PUC certificate. The parties then applied to the PUC for approval of the transaction. Protests were filed but on August 6, 1974, after general hearings, the PUC authorized the sale. A rehearing was requested on August 14 and August 15, 1974, but respondent nevertheless went forward and on August 19, 1974, took over Alltrans and operated it as a separate division under the name of TransCal Motor Express, Inc. (TransCal). A limited rehearing was ordered October 8, 1974.

Alltrans (TransCal) continued to operate unprofitably, and on May 1, 1975, respondent decided to sell it. On May 22, 1975, respondent announced that it would close down TransCal effective May 30, 1975. On May 21, 1975, the closure was tentatively approved by union representatives in accordance with the applicable collective bargaining agreement. In August 1975 the tentative approval was finally approved by the applicable union committee.

On May 28, 1975, the commission staff filed a motion for an interim order to require respondent ". . . to continue serving all of the TransCal customers served by Alltrans . . . at time of acquisition . . . in the same manner to which Alltrans customers have been accustomed when served by Alltrans Express California, Inc.," and on May 29, 1975, they filed an amended motion to prevent the shut down. On June 9, 1975, one of the protestants petitioned the PUC for an interim order requiring respondent to reinstate Alltrans service noting that there was no commission order authorizing respondent to abandon Alltrans

the commission, immediately preceding or following the item."

[ § 851.] "No public utility other than a common carrier by railroad subject to Part I of the Interstate Commerce Act (Title 49, U.S.C.) shall sell, lease, assign, mortgage, or otherwise dispose of or encumber the whole or any part of its railroad, street railroad, line, plant, system, or other property necessary or useful in the performance of its duties to the public, or any franchise or permit or any right thereunder, nor by any means whatsoever, directly or indirectly, merge or consolidate its railroad, street railroad, line, plant, system, or other property, or franchises or permits or any part thereof, with any other public utility, without first having secured from the commission an order authorizing it so to do. Every such sale, lease, assignment, mortgage, disposition, encumbrance, merger, or consolidation made other than in accordance with the order of the commission authorizing it is void. The permission and approval of the commission to the exercise of a franchise or permit under Article 1 (commencing with Section 1001) of Chapter 5 of this part, or the sale, lease, assignment, mortgage, or other disposition or encumbrance of a franchise or permit under this article shall not revive or validate any lapsed or invalid franchise or permit, or enlarge or add to the powers or privileges contained in the grant of any franchise or permit, or waive any forfeiture.

"Nothing in this section shall prevent the sale, lease, encumbrance or other disposition by any public utility of property which is not necessary or useful in the performance of its duties to the public, and any disposition of property by a public utility shall be conclusively presumed to be of property which is not useful or necessary in the performance of its duties to the public, as to any purchaser, lessee or encumbrancer dealing with such property in good faith for value; provided, however, that nothing in this section shall apply to the interchange of equipment in the regular course of transportation between connecting common carriers."

service or to close down or sell off equipment, citing Public Utilities Code sections 451 and 491.

Rehearing commenced on June 23, 1975. During the rehearing period it was argued that the May 30, 1975, closing of TransCal was unauthorized. On January 22, 1976, the staff withdrew its May 1975 motions on the ground of mootness and the present action in superior court was filed in February 1976. The rehearing continued off and on through December 1977. Ultimately, on December 22, 1978, the commission denied the application for approval of the 1974 sale, thereby reversing its 1974 approval without directly ruling whether the 1975 TransCal (Alltrans) closedown was lawful. The PUC found that the acquisition would have a substantial and serious anticompetitive effect.

On June 5, 1979, respondent's petition for rehearing was denied. On February 13, 1980, the PUC filed its order authorizing Alltrans and respondent to file tariffs on less than statutory notice, which had the effect of finally reinstating the status quo as it existed prior to the sale in 1974.

Although the question of whether respondent required PUC authorization before it shut down TransCal (Alltrans) in May 1975 remained at least a collateral issue throughout the PUC proceedings, the PUC addressed the question only by noting that although duplicate service was being offered by respondent the shutdown was "accomplished without Commission authority."

### CONTENTIONS

The sole issue here is whether the superior court has jurisdiction of the within lawsuit given the pendency of the PUC proceedings.[3] Although respondent in its motion for summary judgment argued federal preemption as a ground for judgment, it apparently abandoned this point on appeal because it is not again asserted.[4]

Appellant contends that since the PUC cannot award monetary damages for violation of the Public Utilities Code, the state court is the only recourse available. Respondent urges that the PUC has exclusive jurisdiction and in any event it implicitly ruled that the shutdown was proper; and, therefore, the superior court had no jurisdiction to rule otherwise.

[3]Appellant attempts to implant in the record what the trial court believed the issue to be and what issues it considered, set aside, and ruled on. However, the record here is simply that the court granted summary judgment on the ground it lacked jurisdiction because the PUC had exclusive jurisdiction. There is nothing in the record to show that the court did not consider all the points raised in the motion for summary judgment.

[4]The federal preemption argument centered around the approval of the shutdown by plaintiff's union in August 1975; that such approval was the result of good faith negotiation under the terms of a collective bargaining agreement all accomplished pursuant to section 8, subdivision (d), of the National Labor Relations Act.

## Discussion

The cause of action urged by appellant herein is founded on Public Utilities Code section 2106 which reads as follows: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

"No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt." It is alleged that respondent violated Public Utilities Code section 451, 491 and 851. Underlying the allegation of violations is the contention that the shutdown was done without PUC authority and caused damage to the employees, including plaintiff, of the closed-down division.

The issue of the propriety of the closure was before the PUC, albeit collaterally, during the long process of considering the original purchase of Alltrans by respondent. Clearly, the superior court could not interfere with the commission in the performance of its official duties.[5] There is a potential conflict between sections 2106 and 1759 as one appears to give the statutory right to a cause of action and the other severely hampers that right if the PUC is concurrently handling the underlying issue. This conflict has been put to rest, however. In *Waters* v. *Pacific Telephone Co.* (1974) 12 Cal.3d 1, 4-5 [114 Cal.Rptr. 753, 523 P.2d 1161], the court held: "We further conclude that, in order to resolve the potential conflict between sections 1759 and 2106, the latter section must be construed as limited to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies. Our disposition of this case will not insulate the commission's policies regarding limitation of liability from review by this court; under sections 1756-1758, this court retains jurisdiction to review, on petitions for writ of review or certiorari, the lawfulness of any order or decision of the commission in accordance with the procedures set forth in those sections."

---

[5]Public Utilities Code, Section 1759 reads as follows: "No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases."

■ Public Utilities Code section 2106 authorizing damage actions must be construed in harmony with section 1759 to avoid unnecessary conflict. Section 2106 can only be utilized when it will not interfere with or obstruct the commission in carrying out its own policies. (*Waters* v. *Pacific Telephone Co.*, *supra*, 12 Cal.3d 1, 11.) This, of course, would include the preclusion of recovery of damages resulting from conduct of a public utility. Other forms of redress are more appropriate, particularly when the basis of the lawsuit involves a fundamental policy decision of the utility, that is to shut down a public utility operation, which is inimical to PUC regulatory authority. ■ The PUC has exclusive jurisdiction over the regulation and control of utilities, and once it has assumed jurisdiction, it cannot be hampered, interfered with, or second-guessed by a concurrent superior court action addressing the same issue. (See *Pacific Tel. & Tel. Co.* v. *Superior Court* (1963) 60 Cal.2d 426, 429-430 [34 Cal.Rptr. 673, 386 P.2d 233].) Even if the PUC makes an invalid order, it is binding and conclusive until annulled by the Supreme Court, which is the only court that can review PUC orders. (See Pub. Util. Code, § 1756; *Hickey* v. *Roby* (1969) 273 Cal.App.2d 752, 763-764 [77 Cal.Rptr. 486].) Moreover, if a superior court were to determine certain rights between parties, a later applicable decision by the PUC would supersede the prior superior court judgment. (*Id.* at p. 764.) Thus it makes no difference that the within action was filed before the PUC determined the case before it.

Whatever the PUC decided in the proceedings it had before it was reviewable on petition for writ of review or certiorari to the Supreme Court. The scope of review in the Supreme Court is broad, to wit, a determination "whether the commission has regularly pursued its authority" and "a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States and of this State." (Pub. Util. Code, § 1757.) Clearly, the scope of review would encompass the issues presented in the within action, that is, did respondent have the right to shut down its TransCal (Alltrans) division without specific authority of the PUC. The PUC had that issue before it at all stages of the proceedings and even though its final order did not ultimately determine the issue, it noted that it was done without PUC authority even though duplicate service was being offered by respondent. That is understandable since its ultimate order rendered moot the question of the shutdown by denying permission for the original sale. The denial had the effect of returning respondent and Alltrans to the status quo ante in 1974 before the tentative acquisition. Thus, a determination of whether respondent needed authority to shut down was not necessary. Accordingly, we reject respondent's argument that the PUC implicitly ruled favorably on the shutdown—it did not rule either way.

With regard to the summary judgment motion, the issue turns on a matter of timing. The notice of motion for summary judgment was filed December 16,

1980; the motion was heard January 9, 1981, and the order granting it was signed and ensuing judgment entered January 28, 1981. The court specifically held that it did not have jurisdiction over the issue of whether there were violations of the Public Utilities Code. At that time the PUC did not have the issue before it, nor had it determined the issue in its 1978 decision. As noted above, that issue was rendered moot by its decision that the acquisition was to be rejected.

If the summary judgment motion had been made during the time of the PUC proceedings, the court's determination that it should not determine the issue would have been proper. The court could simply have held the matter in abeyance until the PUC acted. (See *City of Oakland* v. *Key System* (1944) 64 Cal.App.2d 427, 442 [149 P.2d 195].) However, at the time of the actual ruling there was no issue before the PUC nor a PUC determination of the issue. Therefore, the court's reason for granting the judgment is not well founded. Until the PUC acted, the superior court had jurisdiction. (See, *Miller* v. *Railroad Commission* (1937) 9 Cal.2d 190, 195 [70 P.2d 164, 112 A.L.R. 221]; *Truck Owners etc. Inc.* v. *Superior Court* (1924) 194 Cal. 146, 153 [228 P. 19].)

■ However, a summary judgment will be upheld when the record establishes that there is no cause of action. (See *County of Los Angeles* v. *Security Ins. Co.* (1975) 52 Cal.App.3d 808, 816 [125 Cal.Rptr. 701].) We are not confined, in considering the granting of the summary judgment, to the sufficiency of the stated reasons. It is the validity of the ruling which is reviewable and not the reasons therefor. (See *Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 598 [108 Cal.Rptr. 219].) A motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings. (*C.L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483]; *Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 710 [136 Cal.Rptr. 871]; *Magna Development Co.* v. *Reed* (1964) 228 Cal.App.2d 230, 234-235 [39 Cal.Rptr. 284].)

■ The complaint herein does not state facts sufficient to state a cause of action. The complaint is founded on the allegations that the shutdown was in violation of Public Utilities Code sections 451, 491 and 851, and therefore section 2106 allows recovery of damages flowing from the alleged violations.

The Supreme Court has recently ruled that section 453, subdivision (a),[6] a companion section to section 451, is not limited to a prohibition of "rate or service-oriented discrimination." That is, an employee, present or past, can

___

[6] "No public utility shall, as to rates, changes, services, facilities, or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage."

bring a damage action pursuant to section 2106 alleging a violation of section 453. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478 [156 Cal.Rptr. 14, 595 P.2d 592]; cf. *Pacific Tel. & Tel. Co.* v. *Public Utilities Com.* (1950) 34 Cal.2d 822 [215 P.2d 441].) It could be argued that a similar action could be maintained by alleging violation of section 451. However, appellant fails to allege any facts whatsoever to show that respondent violated section 451. There are no allegations of unreasonable rates being charged as prohibited by the first paragraph of the section and certainly nothing showing how appellant could have been injured by such action. Also, there are no allegations of inadequate service, facilities, etc., as prohibited by the second paragraph. Moreover, this section, through section 2106, is primarily a damage recourse for injured utility users or competitors injured by conduct of a regulated utility. (See, e.g., *Coast Truck Line* v. *Asbury Truck Co.* (1933) 218 Cal. 337 [23 P.2d 513]; *Masonite Corp.* v. *Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1 [135 Cal.Rptr. 170]; *Vila* v. *Tahoe Southside Water Utility* (1965) 233 Cal.App.2d 469 [43 Cal.Rptr. 654].) Actions by employees of a utility seeking redress against their public utility employer do not fall within the traditional ambit of this section.

The same is true with regard to section 491. There are no allegations of changes in any rate, classification, rule, control, privilege or facility with or without 30 days' notice to the commission.[7] Appellant apparently concedes the inappropriateness of sections 451 and 491 as his briefs on appeal are limited to section 851 without mention of section 451 or 491.

Public Utilities Code section 851 essentially provides that no transfer or encumbrance by a regulated utility can occur without PUC approval. This section is within the chapter of the Public Utilities Act entitled "Regulation of Public Utilities," whereas sections 451 and 491 are within the chapter concerning "Rights and Obligations of Public Utilities." The purpose of the statute pertaining to regulation is to set out some powers of the PUC in its supervision and regulation of public utilities. (See Pub. Util. Code, § 701.) This is different from the purpose of sections such as 451 and 453 in the statutory scheme setting forth rights and obligations. ■ These sections are generally for the benefit of users and competitors, and possibly employees. These sections set forth obligations of utilities to comply with the implied consent that their monopolistic authority will be utilized for the good of the public need. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co., supra,* 24 Cal.3d 458, 476.) As such they are guidelines for utility activity in relation to its customers and competitors and, in some cases, employees. With the aid of section 2106, the sections are enforced privately provided such enforcement does not encroach or hamper PUC supervision or regulation. On the other hand, section 851 is more

---

[7]On the contrary, the record indicates notice to the commission of the impending shutdown in May 1975.

administrative in nature and is principally related to the threshold issue of how a utility can operate or change operations; that is, section 851 simply requires approval before there is transfer or encumbrance of utility property. The section sets out no fundamental rules on how it is to conduct itself with its users and competitors. If there is an alleged violation of section 851, then the PUC is the forum to hear that matter on an administrative level. The statute does not, however, contemplate serving as a basis for damage recovery by a user, competitor or an employee. The primary consideration of section 851 is whether a proposed transfer would be in the public interest. ■■■ Therefore, section 851 is not a section which will serve as a basis for a section 2106 damage action by employees of a utility. It is not designed to do so. Fundamentally, to allow a section 2106 action based on an alleged violation of section 851 would undermine the overall concept of section 1759. As noted, sections 1759 and 2106 must be construed in a manner which harmonizes them, and section 2106 only authorizes actions "which would not interfere with or obstruct the commission in carrying out its own policies." (*Waters* v. *Pacific Telephone Co.*, *supra,* 12 Cal.3d 1, 11.) Further, the PUC has broad discretion to exempt any utility from the proscription of section 851 if it finds the application of the section "not necessary in the public interest." (Pub. Util. Code, § 853.)[8] Obviously, the PUC in exercising this broad discretion must have a full review unhampered by pending or potential section 2106 damage actions. Finally, the operative complaint herein makes no allegations of how the alleged unauthorized closure caused plaintiff damage, nor are there allegations that the closure was a "sale, lease, assignment, mortgage, disposition, encumbrance, merger, or consolidation" within the meaning of section 851.

## CONCLUSION

The complaint does not state a cause of action. Accordingly, the judgment is affirmed.

Potter, Acting P. J., and Lui, J., concurred.

---

[8]On the other hand, we find unpersuasive respondent's argument that the second paragraph of section 851, which exempts dispositions by a public utility which are not "necessary or useful in the performance of its duties to the public," is applicable here. The PUC did not apply this paragraph in its determination, and we do not interpret it as providing foundation for respondent's implied interpretation of the PUC holding.