Filed 3/7/13  San Leandro Land v. Nicholas K. Corp. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAN LEANDRO LAND, LLC,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS K. CORPORATION,<br><br>        Defendant and Appellant. | A131679 & A132045<br><br>(Alameda County<br>Super. Ct. No. RG09440887) |

Defendant Nicholas K. Corporation (NKC), formerly Paulus Enterprises, Inc. (Paulus Enterprises) doing business as The Ford Store San Leandro (The Ford Store), appeals from a bench trial judgment, and an amended judgment awarding costs and attorney fees (the fees award), each in favor of plaintiff San Leandro Land, LLC (San Leandro Land) in this action for breach of contract.[1]  The contract is a written "Side Agreement" (side agreement) for rent increases executed along with an "Agreement for Purchase and Sale of Stock" (stock purchase agreement).  NKC attacks the judgment for claimed error in summary judgment granted to San Leandro Land on NKC's amended cross-complaint for rescission, reformation and declaratory relief, and the fees award by

---

[1] The judgment, filed February 23, 2011, is for $439,569.00, consisting of $358,824.00 principal, $30,170.00 prejudgment interest, $15,085.00 late fees, plus $35,490.00 reflecting a 2.6 percent consumer price index increase, and declares San Leandro Land the prevailing party for costs, disbursements, and any recoverable attorney fees, subject to a memorandum of costs.  The fee award, filed July 15, 2011, is for $162,983.81, consisting of $3,436.31 in costs and disbursements, and $159,547.50 in attorney fees.

1

arguing that San Leandro Land is not a prevailing party and, in any event, waived fees by failing to seek mediation before bringing suit as required by the stock purchase agreement. We ordered the appeals consolidated, and now reject all of the asserted bases for reversal.

## BACKGROUND

This litigation is about a side agreement to a stock purchase agreement. The stock purchase agreement effected a sale of a Ford dealership from one individual owner to another, and the side agreement, between business entities, effectively added to the amount of rent called for under a ground lease.

The stock purchase agreement was not sued upon in this litigation, but provides context for the side agreement. Tim Paulus and Robert Knezevich executed the stock purchase agreement on February 7, 2008, in their individual capacities, effectuating a sale of all of Paulus's shares of stock in The Ford Store to Knezevich, as new owner, who also owned and operated another Ford dealership, Hayward Ford. Paulus Enterprises held a 25-year lease of The Ford Store premises and, in 2002, had secured a dealership sublease of the premises from primary tenant Ford Leasing Development Company (Ford Leasing).

The stock purchase agreement referenced exhibits that included, as Exhibit I, the side agreement. One of many seller's conditions precedent to closing was that "Buyer shall have executed that certain Side Agreement between Corporation [i.e., San Leandro Ford] and San Leandro Land, LLC with respect to rent increases attached hereto as Exhibit 'I' "; and one of buyer's conditions was, similarly, that "San Leandro Land, LLC shall have executed and delivered to Buyer that certain Side Agreement re: Option to Purchase Land attached hereto as Exhibit 'I.' " Each party also required delivery of the side agreement at closing, and an integration clause provided: "This Agreement and the exhibits referred to in it constitute the final, complete and exclusive agreement between the parties pertaining to the Shares, including their sale and any related matters, and any other subject matter contained herein . . . . Exhibits 'A' through 'K' referred to herein are attached to and made a part of this Agreement." An attorney fee provision in the stock

2

purchase agreement provides for costs, expenses and attorney fees to the prevailing party in any litigation over the agreement, but requires mediation of disputes and states that a party's failure to pursue mediation before bringing suit waives attorney fees.

The side agreement is a landlord-tenant agreement between entities San Leandro Land and Paulus Enterprises. It was executed on the same date as the stock purchase agreement, was signed by Knezevich as President of subtenant Paulus Enterprises doing business as The Ford Store, and by Paulus on behalf of landlord San Leandro Land. Recitals explain that there was a lease agreement between landlord and Ford Leasing, that the dealership sublease of December 2002 had been entered between tenant Ford Leasing and subtenant The Ford Store when Paulus was sole shareholder of subtenant, and that now, through the stock purchase agreement, Paulus sold all of his stock to Knezevich, the new owner and operator of the subtenant. Reciting further that tenant Ford Leasing had waived its right of first refusal to purchase the premises, the document states: "The Parties desire to enter into this Side Agreement to accommodate the interests of the Parties under the Stock Purchase Agreement, and in consideration of: (i) Landlord being able to directly collect from Subtenant Incremental Basic Rent Adjustment to the Basic Rent due under the terms of the Lease Agreement and (ii) Subtenant receiving from Landlord an option and right of first refusal to purchase the Premises from Landlord." A seven-month option to purchase (for $13.5 million) and three-year right of first refusal follow, and the rent adjustment states that subtenant shall pay directly to landlord an incremental adjustment of $17,096 per month which, combined with an amended lease amount of $87,904, brings the total monthly rent to an agreed fair market value of $105,000.[2] Further adjustments would be based on a federal consumer price index (CPI) for indicated Bay Area cities, and a prevailing party in any litigation over the side

---

[2] "1.01 Subtenant shall pay directly to Landlord an incremental basic rent adjustment . . . for the Premises in the amount of $17,096 per month, calculated as the difference between $105,000.00 (the agreed fair market rental value for the Premises) and the monthly Basic Rent as stated in the Restatement and Amendment of Lease Agreement in the amount of $87,904.00. . . ."

agreement would recover its costs of suit and attorney fees. Unlike the stock purchase agreement, the side agreement does not mention or require mediation.

A further recital particularly at issue in this case states in part, allegedly in error (italics added): "*Tenant has consented to this Side Agreement* as provided in that certain Amendment and Restatement to Lease Agreement . . . dated as of January 17, 2008."

Performance under the side agreement went smoothly for one year, until the dealership notified San Leandro Land that, due to " 'the state of the economy,' " only half of the $17,096 would be paid as of March 1. 2009. San Leandro Land filed its complaint for damages in March 2009, against Paulus Enterprises doing business as The Ford Store. -71)~ All payments ceased a few months after that.

### Amended Complaint and Answer

Allegations in a first amended and supplemental complaint naming defendant NKC (dba The Ford Store) are that NKC ceased making full payments of $17,096 in March 2009, and made none at all starting in July 2009, despite demand, and thus breached the side agreement. A second cause of action alleged anticipatory breach based on NKC repudiating the side agreement. The pleading sought attorney fees under the agreement's fee provision.

NKC answered, raising an affirmative defense that the contract was void for violating the sublease between NKC and Ford Leasing by not having the consent of Ford Leasing for the direct payment to NKC. The answer also raised, but without explanation, affirmative defenses of failure of consideration, lack of privity of contract, estoppel, and unclean hands.

### Cross-Complaint

In a three-count amended cross-complaint (the cross-complaint), NKC sought rescission, reformation, and declaratory relief. Common to all causes of action are allegations that there was a "Side Agreement #1" and a "Side Agreement #2," each calling for an incremental basic rent adjustment, but the first (from November 2007) based on just the CPI, and the second (executed on January 18, 2008) based on the $17,096.00 figure *plus* yearly CPI adjustments. There were also allegedly two versions

4

of the stock purchase agreement's Exhibit "J," a "Restatement and Amendment to Lease Agreement" between tenant Ford Leasing and landlord San Leandro Land. The first, which was never executed, called for basic rent to be $105,000.00, and the second, allegedly signed on January 18, called for the $87,904 figure.

Rescission rested on a theory that both side agreements required Ford Leasing's consent but that Ford Leasing had consented only to the first, and that San Leandro Land used "economic duress" to secure NKC's agreement to the second side agreement, i.e., by saying it had to be signed immediately for escrow to close, and applying that pressure at a time when San Leandro Land knew NKC was closing its other dealership, was transferring hundreds of cars to the new premises, had a separate group of employees ready for the new location, and had negotiated a new union contract and pension liability plan for the new location. This assertedly required rescinding the second side agreement and restoring the first as the only one extant when the stock purchase agreement was signed, allegedly on December 20, 2007. Reformation was based on an alleged need for "Side Agreement #2" to be reformed to incorporate just the CPI adjustment—the parties' only extant agreement. Declaratory relief was sought to determine whether the side agreement for the $17,096.00 was "valid and effective, even if it was not part of [the] Stock Purchase Agreement," was not consented to by Ford Leasing, and was obtained by economic duress.

### *Summary Judgment*

In December 2010, after discovery, San Leandro Land moved for summary judgment on the amended cross-complaint. Having already explored the agreements in this case, we recite some basic undisputed facts about the formation of the contract here, adding other evidence in the discussions which follow.

Under a 2002 agreement, San Leandro Land leased the property comprising the dealership premises to Ford Leasing, and by an agreement of that same date, Ford Leasing in turn subleased it to Paulus Enterprises. In negotiations for the 2008 side agreement at issue here, San Leandro Land and NKC were represented by counsel, and after the side agreement had been amended to reflect the final basic rent of $87,096, the

5

parties negotiated the addition of the option to buy and right of first refusal for NKC, and the elimination of a personal guarantee initially proposed for Knezevich.

At the closing on February 7, 2008, Paulus and Knezevich executed the side agreement for their companies, plus a closing memorandum that acknowledged and agreed that the rent had recently increased to $105,000 per month.

The Honorable George C. Hernandez, Jr., heard and granted the motion, writing: "There is no triable issue of material fact as to any claim alleged in the Amended Cross-Complaint. San Leandro Land, LLC demonstrates that the claims are without merit and Cross-Complainant 'The Ford Store San Leandro' fails to submit sufficient evidence that establishes that Third Party Ford Leasing failed to consent to the Second Side Agreement, that the Second Side Agreement was signed under duress, or that there was fraud or mistake such that the Second Side Agreement is subject to reformation. . . . Thus, the claims in the Amended Cross-Complaint appear to be without merit."

### Court Trial

Bench trial on San Leandro Land's amended complaint proceeded also before Judge Hernandez, with the court granting an in limine motion by San Leandro Land to foreclose relitigating issues adjudicated in the summary judgment ruling. We acknowledge, as San Leandro Land repeatedly stresses in its briefing, that the subsequent trial testimony supported the earlier ruling in result, but we must confine our review of the pretrial ruling to matters that were before the court at that time (*In re Zeth S.* (2003) 31 Cal.4th 396, 405) and thus disregard the trial testimony to that extent.

NKC does not challenge the trial judgment as to the issues actually adjudicated, and so it is enough to state that the court found that NKC did breach the side agreement, and issued a statement of decision resolving two issues that San Leandro Land specified in a request for written statement of decision. One was whether to include a CPI increase as damages, and the court allowed those damages. The other, responding to a proposed judgment that would have declared San Leandro Land the prevailing party, entitled to recover from NKC "the cost of suit and disbursements, including any recoverable reasonable attorney's fees, in the amount of $_____," was whether reasonable costs

6

and fees should be awarded "before issues relating to whether Plaintiff is even entitled to recover attorney's fees can be resolved at the hearing on a motion to recover attorney's fees." The court, in its statement of decision, declared San Leandro Land the prevailing party for purposes of costs (Code Civ. Proc., § 1033.5, subd. (b)(5)) and contractual attorney fees generally (Civ. Code, § 1717),[3] but added: "Plaintiff's right to recover reasonable attorney's fees and the amount of such fees shall be determined and fixed by a motion filed and served under [section] 1717." The court's ultimate judgment altered the wording to declare San Leandro Land the prevailing party, able to recover costs and disbursements including "any recoverable reasonable attorney's fees [] subject to a memorandum of costs."

### *Fees Award*

In March 2011, San Leandro Land moved for a determination of prevailing party status and award of reasonable attorney fees, citing the judgment in its favor for $439,569 in damages for breach of the side agreement (§ 1717; fn. 1, *ante*) and prevailing-party provisions for costs and fees under paragraphs 5.03 and 5.04 of the side agreement. NKC opposed any award, urging as it does now on appeal, that the controlling provisions were not those in the side agreement but those in the stock purchase agreement, which it contended was *part of* the stock purchase agreement and thus required resort to mediation before any party could bring suit. Since San Leandro Land had not sought mediation first, it had assertedly waived any right to fees and costs. Replying with arguments that are also repeated on appeal, including that the two agreements did not involve the same parties, San Leandro Land prevailed. Judge Hernandez granted the motion and, by an amended judgment, awarded San Leandro Land a total of $162,983.81 in costs, disbursements and attorney fees (see fn. 1, *ante*).

---

[3] Unless otherwise specified, all further section references are to the Civil Code.

7

## DISCUSSION

### I. *Summary Judgment*

#### A. *Standards*

"A grant of summary judgment is proper where it appears no triable issues of material fact exist, and judgment is warranted as a matter of law. [Citations.] As the moving party, the defendant must show that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case' on one or more elements of the cause of action. [Citations.] The reviewing court independently examines the record and considers all of the evidence set forth in the moving and opposing papers except that as to which objections have been made and sustained. [Citations.]" (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 285.) There were no evidentiary objections in this case.

The search for triable issues of *material* fact (Code Civ. Proc., § 437c, subd. (c)) is confined by *the pleadings*. "[T]he pleadings define the issues; thus ' "[I]n the absence of some request for amendment there is no occasion to inquire about possible issues not raised by the pleadings." ' [Citations.]" (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885.) "A 'moving party need not ". . . refute liability on some theoretical possibility not included in the pleadings." [Citation.]' [Citation.] ' "[A] motion for summary judgment must be directed to the issues raised by the pleadings. The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings." [Citation.]' [Citations.]" (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342-1343 (*Tsemetzin*).) Thus, "[a] motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings. [Citations.]" (*Barnett v. Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682.)

#### B. *Fraud and Mistake*

Before examining the cross-complaint's causes of action for rescission, reformation, and declaratory relief, we examine argument by NKC that the asserted *misstatement* of Ford Leasing having consented to the side agreement raised triable issues

as to whether this involved fraud by San Leandro Land, or mistake of fact by NKC.  This argument raises three related hurdles for NKC that occupy the parties' briefing.  First, there having been no cause of action for fraud or mistake as such and no effort by NKC to amend its pleading to state one, we have a threshold problem that, even if there are triable issues of fact about fraud and mistake, summary judgment is confined to a search for issues of *material* fact—i.e., facts material *to the allegations in the pleading*.  Second, if fraud or mistake is evident from the cross-complaint, or perhaps an equitable defense, this raises the familiar rule that fraud must ordinarily be pleaded with particularity, another test of pleading sufficiency inherent in summary judgment.  Third, pleading aside, the parties debate an evidentiary question whether, under the statutory rule that recitals in written instruments are conclusively presumed true as between the parties to them (Evid. Code, § 622), evidence supported a case law exception for recitals arising from bases for rescission.  (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1291.)

  **1.  Pleading issues**.  " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  "In California, fraud must be pled specifically; general and conclusory allegations do not suffice.  [Citations.]  'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " [Citation.]  [¶] This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]  A plaintiff's burden in asserting a fraud claim against a corporate entity is even greater.  In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak to whom they spoke, what they said or wrote, and when it was said or written.' [Citation.]" (*Id.* at p. 645.)  And "[e]very element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically)" in order to

9

survive challenge. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47.)

NKC's cross-complaint is grossly deficient. It alleges misstatement of consent as a basis for rescinding the side agreement, albeit as failure of a condition precedent, but does not allege any intent to defraud, i.e., intent to induce anyone's reliance. It does not allege who caused the assertedly false statement to be placed (or to remain) in the recitals. It does not allege that the person responsible did so knowing the recital to be false or with intent to induce NKC's (or its representative's) reliance—a key fact given that the inclusion could have been the result of inadvertence or innocent error. It does not allege that NKC (or Knezevich on its behalf) noticed the recital or relied on it. Knezevich's declaration in opposition to summary judgment, that he did rely on the recital, and was misled, and would not have executed the side agreement had he known there was no consent, was no substitute for an amendment of the pleading. (*Tsemetzin*, *supra*, 57 Cal.App.4th at p. 1343; *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1664 (*Bostrom*).)

NKC argues that it "preserved a potential claim of fraud or mistake about [Ford Leasing's] consent" by raising equitable theories of estoppel and unclean hands in the answer to the breach-of-contract complaint filed by San Leandro Land in the main action. We are cited no authority for the startling proposition that this could somehow insulate NKC's deficient cross-complaint from attack by summary judgment, and we know of none. Besides, NKC's conclusory answer presented its estoppel and unclean hands defenses without any factual allegations whatsoever. "Summary judgment cannot be granted on a ground not raised by the pleadings. [Citations.] Conversely, summary judgment cannot be *denied* on a ground not raised by the pleadings. [Citations.]" (*Bostrom*, *supra*, 35 Cal.App.4th at p. 1663.)

Next, the particularity requirement unique to fraud is a short answer to NKC's citation to cases that, in some contexts, have allowed theories that were new but within the *reasonable purview* of existing pleadings. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 75 [new affirmative defense]; *Cruey v.*

10

*Gannett Co.* (1998) 64 Cal.App.4th 356, 367 [new defense].)  Those cases did not involve pleadings so divest of particularity as NKC's.  Stated another way, fraud was not within the reasonable purview of NKC's pleadings—answer or cross-complaint.  "[T]he allegations in a fraud action need not be liberally construed" (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331), and even if we were inclined to do so, no *reasonably* liberal construction could save these particular pleadings.

NKC posits as an excuse for not seeking leave to amend that "Paulus deterred an express fraud allegation by continuing to conceal the fact he knew about [Ford Leasing's lack of] consent [and thus] should not be allowed to benefit from that concealment."  For this proposition, NKC stresses that it did not take the deposition of Ford Leasing's manager, Lynch, until 12 days before NKC's opposition was due, and thus assertedly learned only then of a lack of consent.  Lynch did not recall ever seeing the final version of the side agreement, could not find any evidence that Ford Leasing received it, and did not think Ford Leasing approved or objected to it.[4]  NKC has not shown that seeking leave to amend within two weeks of its opposition being due would have been futile or statutorily prohibited.  Any arguments about delayed discovery surely could have been raised to the trial court on such a request, yet no request was made.[5]  "Such requests are routinely and liberally granted.  However, ' " '[I]n the absence of some request for

_____

[4] Between Lynch's deposition and NKC's opposition, NKC secured a declaration by Jeffrey Polley, custodian of records for Ford Motor Credit Company LLC (Ford Credit), an entity that dealt with financial aspects of dealerships in Northern California and was generally informed of stock purchase agreements and lease changes.  Lynch could locate only a copy of the first version of the side agreement, not the second, and no record of a consent.

[5] We do not suggest that delayed discovery, standing alone, was a compelling argument.  NKC had alleged in its cross-complaint (as amended) that Ford Leasing's consent was a condition precedent for the side agreement, that San Leandro Land had never produced evidence that the consent was given, and that this failure of a "condition precedent" therefore warranted rescission.  If that state of knowledge about the consent was enough to spur a claim of rescission based on a condition precedent theory, we do not understand why it was not enough to immediately plead further theories of fraud or mistake.

11

amendment there is no occasion to inquire about possible issues not raised by the pleadings.' " ' [Citations.]" (*Bostrom*, *supra*, 35 Cal.App.4th at p. 1664.) Lack of a request means that we have no ruling on the matter to review.

Nor are we persuaded to go beyond the pleading deficiency because Judge Hernandez implicitly did so by writing in his order adopting the tentative ruling that San Leandro Land failed "to submit sufficient evidence that establishes that [t]hird party Ford Leasing failed to consent . . . ." From the vigorous reply arguments from San Leandro Land, Judge Hernandez was well aware of NKC's pleading problem, and we have no need to review his foray into the merits. His grant of summary judgment was correct as a matter of law on the threshold issue of the pleading deficiency, whether or not stated that way. " ' "[I]f the reviewing court finds the complaint [or cross-complaint] fails to state facts sufficient to constitute a cause of action as a matter of law, it need not reach the question whether [the] opposition to the summary judgment motion raises a triable issue of fact.' " [Citation.]" (*Bostrom*, *supra*, 35 Cal.App.4th at p. 1663.) We review the ruling, not the reasons stated for it. (*O'Byrne v. Santa Monica-UCLA Medical Center* (2001) 94 Cal.App.4th 797, 804-805)

Similarly, NKC's reliance on *Bostrom* as a basis upon which to reach the merits of a theory that is insufficiently pled is unpersuasive. First, *Bostrom* did not involve the particularity requirement of fraud. Second, on review of a summary judgment grant to defendant county, and facing arguments that the complaint failed to state a cause of action, the *Bostrom* court said it was "inclined to agree," but reasoned: "If we were to hold [as much], we would have discretion (and might even be required) to remand with directions to permit the Bostroms to move for leave to amend. [Citation.] The net result could well be a new complaint and a new motion for summary judgment, followed by a new appeal, which we would have to decide on the merits. We therefore choose not to resolve the appeal on this basis. [¶] Instead, we look to whether the Bostroms raised a triable issue of fact [on any of their opposition theories]. If not, then summary judgment without leave to amend was properly granted regardless of whether these theories were pleaded or unpleaded." (*Bostrom*, *supra*, 35 Cal.App.4th at p. 1664.) As here, the trial

12

judge in *Bostrom* had reached just the merits as well, but *Bostrom* is not authority that we must do the same. *Bostrom* simply found it expeditious to do so given the record and arguments presented. Here, by contrast, the deficiencies are clear, and we can expeditiously resolve the matter on that basis. We need go no further. (*Id*. at p. 1663.)

That leaves the question of mistake. One basis for rescinding a contract is "[i]f the consent of the party rescinding . . . was given by mistake . . ." (§ 1689, subd. (b)), but the entirety of the cross-complaint's allegations for rescission are, in effect, that consent by Ford Leasing was required for the side agreement and that San Leandro Land had never produced evidence that the consent was given. We do address the merits of that theory, *as an evidentiary matter*, in the next following section of this opinion, but hold here that mistake is not *pleaded*, or within the *reasonable purview* of NKC's pleading. The pleading does not allege that either party was unaware at the time of signing that Ford Leasing had not consented to the side agreement.

The cross-complaint did not sufficiently allege causes of action for, or based on, fraud or mistake.

**2. Evidence Code section 662 presumption.** The question remains whether, affirmative pleading aside, there was *evidence* of fraud or mistake such that the court, *as an evidentiary matter* on summary judgment, could not rely on the conclusive presumption of Evidence Code section 622 as to recitals between the parties in written instruments.[6] The side agreement recites in part, referring to Ford Leasing as tenant: "Tenant has consented to this Side Agreement as provided in that certain Amendment and Restatement to Lease Agreement ('Amendment to Lease Agreement') dated as of January 17, 2008."

We review *evidentiary questions* on summary judgment not for triable issues of fact, but deferentially, for abuse of discretion (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 192, fn. 13), and we uphold in this case Judge Hernandez's implicit

---

[6] "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration." (Evid. Code, § 622.)

conclusion that the presumption had not been vitiated. We say *implicit* because, while neither side pressed below for a ruling on the evidentiary question (nor complains now of the lack of one), Judge Hernandez did rule, as to fraud and mistake in the second cause of action, that there was not "sufficient evidence that establishes . . . that there was fraud or mistake such that the Second Side Agreement is subject to reformation."

For many of the reasons expressed in the next two sections of this opinion, mistake was not made out. Additionally, Judge Hernandez could reasonably find that any misrepresentation about whether Ford Leasing had consented to the side agreement was not sufficiently material. Knezevich was an experienced Ford dealer, having owned and operated his dealership in Hayward since 1991, and having held a minority interest in a Burlingame dealership for a decade before that. NKC argues that any reasonable person would think it important that Ford Leasing had approved a rent increase, taking it as an endorsement of their ability to carry out the business at that amount of rent. The problem with that assumption, however, is that there is no evidence that Ford Leasing had or reviewed any of NKC's dealership records to assess their past sales volume, ordinary costs of operations, and other financial information.

Lack of fraud to vitiate the presumption is also supported for much the same reason. Judge Hernandez could reasonably conclude that, for an experienced dealership owner like Knezevich, and given the lack of evidence that Ford Leasing could usefully evaluate the financial prospects of a new dealership at the higher rent, the presence of Ford Leasing's consent would not have been much of an inducement, and its absence certainly not a deal breaker—regardless of Knezevich's bald declaration to the contrary.

### C. *Rescission*

By its first cause of action, NKC seeks rescission because "[b]oth side agreements required the consent of Ford Leasing," the consent is a "condition precedent," and San Leandro Land provided no "evidence that Ford Leasing consented to the additional payment of $17,096.00 per month prior to the execution of" the second side agreement. The shortest answer is that the side agreement NKC seeks to rescind by its cross-complaint did *not* make Ford Leasing's consent a condition precedent, and NKC

14

conceded the point at oral argument before this court. The stock purchase agreement between Paulus and Knezevich does call Ford Leasing's consent a "condition precedent" to closing, for both buyer and seller, but this lawsuit between San Leandro Land and NKC is about the side agreement for incremental increase in basic rent, not breach or rescission of the stock purchase agreement. Also, as San Leandro Land noted below and repeats without dispute on appeal, failure of a condition precedent may excuse performance (§ 1436; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts § 776, pp. 866-867), but is not a basis for rescission (§ 1689, subd. (b)).

The second basis for rescission is economic duress, a ground not limited to, but often raised in, challenges to settlement agreements. "Economic duress can be a basis for rescission of a settlement agreement, but only in circumstances where the perpetrator commits 'a *wrongful act* which is sufficiently *coercive* to cause a reasonably prudent person *faced with no reasonable alternative* to succumb to the perpetrator's pressure.' [Citation.] Examples of such 'wrongful acts' include '[t]he assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment . . . .' [Citation.]" (*Myerchin v. Family Benefits, Inc.* (2008) 162 Cal.App.4th 1526, 1539; *Perez v. Uline, Inc.* (2007) 157 Cal.App.4th 953, 959-960.) An expansion of common-law duress, the doctrine is not limited by early requirements of an act in the nature of a tort or crime and "may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. [Citations.] The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine. [Citations.] Further, a reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin. [Citations.]" (*Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158-1159 (*Rich & Whillock*).)

Important policy constraints circumscribe the doctrine. "The underlying concern of the economic duress doctrine is the enforcement in the marketplace of certain minimal

15

standards of business ethics.  Hard bargaining, 'efficient' breaches and reasonable settlements of good faith disputes are all acceptable, even desirable, in our economic system.  That system can be viewed as a game in which everybody wins, to one degree or another, so long as everyone plays by the common rules.  Those rules are not limited to precepts of rationality and self-interest.  They include equitable notions of fairness and propriety which preclude the wrongful exploitation of business exigencies to obtain disproportionate exchanges of value.  Such exchanges make a mockery of freedom of contract and undermine the proper functioning of our economic system.  The economic duress doctrine serves as a last resort to correct these aberrations when conventional alternatives and remedies are unavailing." (*Rich & Whillock*, *supra*, 157 Cal.App.3d at p. 1159.)

The circumstances NKC claims as actionable economic duress are that San Leandro Land, after floating a draft version of the side agreement that would have had an increase based only on the CPI, found itself unable to get Ford Leasing to agree to prime lease amendment increase in basic rent from $87,904 to $105,000, and so presented Knezevich with a new draft that switched the increase of $17,096 to the side agreement, insisting that it was necessary for the deal to close.  This occurred two weeks prior to signing, when Paulus, acting for San Leandro Land through counsel Sean Absher (now San Leandro Land's appellate counsel), knew Knezevich had financial commitments from having negotiated union contracts, started the transfer of hundreds of cars from his Hayward dealership to the San Leandro location, changed utility accounts, had two parts inventories, and was using two sets of union employees and management teams.

What separates this case from the usual is that San Leandro Land had no contractual relationship or other disproportionate clout over NKC preceding the signing, and thus did not, for example, withhold some payment to ratchet up the pressure before presenting NKC with a take-it-or-leave-it escape from turmoil it created itself (typically an oppressive financial move followed by a low settlement offer).  So here, NKC essentially collapses the usual two events into one, calling the rent increase (without divulging lack of Ford Leasing consent) the oppressive wrong *and* the act of taking

16

advantage of NKC. And the kind of economic pressures NKC cites—from taking steps to transition his business to the prospective new location—are surely common during end-stage negotiations, but they were apparently not of San Leandro Land's doing. Nothing shows that the timing of NKC's business transition was hastened or otherwise made more onerous by San Leandro Land, and the record indicates that San Leandro Land actually accommodated NKC twice by extending the closing past the anticipated date of January 18. Also, both parties were represented throughout the negotiations by counsel. NKC's counsel, during the assertedly oppressive final two weeks before the signing of the new side agreement, negotiated on NKC's behalf and at Knezevich's request an option to purchase the land and a right of first refusal, and counsel negotiated on Knezevich's behalf the elimination of a personal guaranty. Notably, nothing indicates that Knezevich or NKC raised any protest against the change in base rent adjustment. (Compare *Rich & Whillock*, *supra*, 57 Cal.App.3d at pp. 1160-1161 [plaintiff strenuously protested coercive tactics, before succumbing to them only to avoid economic disaster to themselves and those affected by an ensuing bankruptcy].) Nor does the evidence show NKC's financial situation at that time, hence leaving Judge Hernandez to speculate whether NKC faced financial ruin from a failed deal, or some far lesser degree of harm.

We agree with Judge Hernandez's decision that there were no triable issues of fact that, on the total facts, would sustain extending the doctrine of economic duress.

## D. *Reformation*

"When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention . . . ." (§ 3399.)

The cross-complaint's second cause of action, incorporating provisions of the first, is for reformation of the final side agreement to reflect the CPI-only terms of the first, as the only true agreement reached by the parties. If NKC means to claim fraud as a reformation basis, there is no express statement to that effect, but if we imply that basis from provisions incorporated from the first cause of action, it is enough to observe that

17

we have already held that fraud was not properly before the court through pleadings. We focus, then, on mistake.

Two flaws defeat the mistake theory. First, reformation is available only to reflect preexisting agreement actually reached by the parties (*Bailard v. Marden* (1951) 36 Cal.2d 703, 708; *Treadaway v. Camellia Convalescent Hospitals, Inc.* (1974) 43 Cal.App.3d 189, 197), and while the cause of action here alleges that the true intentions of the parties (to use just the CPI to adjust basic rent) were reached in a version of the stock purchase agreement "entered into on December 20, 2007," the evidence did not show that the parties executed or otherwise reached mutual accord on that date. Only an unexecuted copy existed. Negotiations continued, with drafts circulated, but no agreement was reached until the same-day signings of the stock purchase and side agreements on February 7, 2008. Second, NKC cannot claim a triable issue of its own mistake in the inclusion of the $17,096 increase in the final side agreement. The amount appears on the document, and Knezevich testified in deposition that his counsel reviewed it before he signed, and that he (Knezevich) understood when signing that he was obligating himself to pay $17,096 a month to Paulus. It was an undisputed fact that he understood that he was requiring his corporation to pay $17,906 directly to San Leandro Land.

## E.  *Declaratory Relief*

There were no new legal theories presented by the third cause of action, for declaratory relief, and so it follows from our foregoing rejection of all substantive claims in the other causes of action, that the court properly also found no triable issue of material fact on this cause of action. (*Dynamic Ind. Co. v. City of Long Beach* (1958) 159 Cal.App.2d 294, 300.)

## II.  *Fees and Costs*

Our foregoing analysis confirms that San Leandro Land was properly deemed the prevailing party in the action, thus defeating NKC's contrary argument as a basis for reversing the fees award. This leaves NKC's argument that the award must be reversed because San Leandro Land did not seek mediation before filing suit, and we reject at the

18

threshold San Leandro Land's argument that the issue is waived by NKC's failure to ask the court to address it in its statement of decision (Code Civ. Proc., § 632) at trial.  In its proposed judgment, the court did seem poised to decide prevailing party status as well as, perhaps, an award amount.  But as already observed in the background part of this opinion, the court responded to objections from NKC by reconsidering and, beyond declaring the obvious—that San Leandro Land had prevailed at trial—ultimately directed that the right to recovery, and amounts, would be fixed upon filing a costs memorandum.  Thus no waiver occurred, even if, as NKC seems to assume, deciding which fees provision applied posed factual issues, rather than a pure question of law requiring no statement of decision at all.  (*Kroupa v. Sunrise Ford* (1999) 77 Cal.App.4th 835, 842; *Enterprise Ins. Co. v. Mulleague* (1987) 196 Cal.App.3d 528, 539.)

This action was brought for breach of the side agreement, which provides in part: "5.03.  *Attorneys' Fees*.  If any legal action, arbitration or other proceeding is commenced to enforce or interpret any provision of this Side Agreement, the prevailing party shall be entitled to an award of its attorneys' fees and expenses.  The phrase 'prevailing party' shall include a party who receives substantially the relief desired whether by dismissal, summary judgment, judgment or otherwise.  [¶] 5.04.  *Cost of Suit*.  In the event that any action shall be instituted by either of the parties hereto for the enforcement of any of its rights or remedies in and under this Side Agreement, or any facts based upon or involving same, the prevailing party, whether in-court or by way of out-of-court settlement, shall be entitled to recover from the nonprevailing party or parties such prevailing party's attorney's fees, court costs, expert witness fees, and/or other expenses relating to such controversy including attorney's fees, court costs and/or expenses on appeal, if any."  Neither provision requires a party to seek mediation before bringing suit, and the very next paragraph provides: "5.05.  *Entire Agreement*.  This Side Agreement contains the entire agreement between the Parties regarding the payment of Incremental Basic Rent Adjustment and Subtenant's Option to Purchase the Premises and supersedes all prior agreements, whether written or oral, between the Parties regarding the same subject.  This

19

Side Agreement may only be modified by subsequent written agreement signed by both Parties."

NKC urges that the foregoing provisions of the side agreement are inapplicable because the fees issue is governed by the mediation-first provision in the stock purchase agreement. Like the side agreement, the stock purchase agreement allows a prevailing party to recover costs, expenses and attorney fees incurred in any litigation by the parties to that agreement (¶ 12c), but unlike the side agreement, it also requires that the parties try to negotiate through mediation any disputes arising under the agreement (¶ 12n), a provision ending, "Any party who initiates court action without first agreeing to attempt resolution of the dispute by mediation shall thereby waive his right to attorneys' fees under paragraph 12c above."[7] It is undisputed that mediation was not sought before San Leandro Land filed this action.

Familiar principles govern our task: a contract is interpreted so as to give effect to the mutual intention of the parties at the time of contracting, to the extent ascertainable (§ 1636); the contract language governs the interpretation if clear and not involving absurdity (§ 1638); if the intention is uncertain, general rules of interpretation are applied (§ 1637); if the contract is reduced to writing, the parties' intention is ascertained from the writing alone, if possible, subject to other interpretive principles (§ 1639); a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates (§ 1647); the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the

---

[7] The stock purchase agreement has its own integration clause: "10. **Entire Agreement**. This Agreement and the exhibits referred to in it constitute the final, complete and exclusive agreement between the parties pertaining to the Shares, including their sale and any related matters, and any other subject matter contained herein, and supersedes all prior and contemporaneous agreements, representations and understand-ings of the parties. No waiver of any provision of this Agreement shall be binding unless executed in writing by the Party making the waiver, nor shall any such waiver constitute a waiver of any other provision, whether or not similar. Any changes or supplements to this Agreement must be in writing and signed by Buyer and Seller. Exhibits 'A' through 'K' referred to herein are attached to and made a part of this Agreement."

other (§ 1641); and we may not insert what has been omitted or omit what has been inserted, and where there are several provisions, we adopt a construction that, if possible, gives effect to all (Code Civ. Proc., § 1858).

Bearing in mind that this lawsuit is for breach of the *side agreement*, we stress that *nothing* in that agreement purports to incorporate the mediation or fees terms of the stock purchase agreement. "A contract may validly include the provisions of a document not physically a part of the basic contract. . . . 'It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] But each case must turn on its facts.' " (*Williams Constr. Co. v. Standard-Pacific Corp.* (1967) 254 Cal.App.2d 442, 454.) The side agreement's own integration provision does not refer at all to the stock purchase agreement; it states: "5.05 Entire Agreement. This Side Agreement contains the entire agreement between the Parties regarding the payment of Incremental Basic Rent Adjustment and Subtenant's Option to Purchase the Premises and supersedes all prior agreements, whether written or oral, between the Parties regarding the same subject. This Side Agreement may only be modified by subsequent written agreement signed by both Parties." This is *not* a case where, for example, an agreement silent on a subject fills the gap by *attaching* and *incorporating by reference* a provision from another writing. (*Republic Bank v. Marine Nat. Bank* (1996) 45 Cal.App.4th 919, 921 [sublease incorporating fees provision from attached master lease].) Rather, our case is far more like one which distinguished *Republic Bank* where the integration clause of a merger agreement referenced in part an affiliate agreement as reflecting the parties' full understanding (like our side agreement) yet the affiliate agreement lacked an attorney fees provision and did *not* expressly incorporate one from the merger agreement. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1606-1607.)

NKC relies on section 1642, the rule that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together," but we, like the trial court, reject that as a basis for reading into the side agreement the mediation-first provision found only in the stock purchase agreement.

21

The two agreements did arise from one "transaction" in the sense that they were executed the same day and Paulus testified that he would not have entered into the stock purchase agreement without the side agreement. He called the side agreement "[a]n integral component" of the stock purchase agreement, which had the side agreement attached as one of the exhibits related to the stock purchase agreement.

The integration clause in the stock purchase agreement did state that the exhibits were "attached to and made a part of this Agreement" and that "[t]his Agreement and the exhibits referred to in it constitute the final, complete and exclusive agreement between the parties pertaining to the Shares, including their sale and any related matters, and any other subject matter contained herein, and supersedes all prior and contemporaneous agreements, representations and understanding of the parties." But it does not follow that Paulus or Knezevich meant to incorporate into the side agreement a mediation term found only in their stock purchase agreement. The integration language was, of course, designed to prevent either party from later claiming that some collateral agreement altered or added to the agreement set out in that writing. It does not suggest that they meant to have a mediation-first clause from the purchase agreement engrafted as a limitation onto the fees and costs provisions of the side agreement. And as has been said of mere joint execution, in finding Civil Code section 1642 inapplicable: " '[J]oint execution would require the court to construe the two agreements in light of one another; it would not merge them into a single written contract.' " (*Pankow Const. Co. v. Advance Mortg. Corp.* (9th Cir. 1980) 618 F.2d 611, 616.) Also: "While it is the rule that several contracts relating to the same matters are to be construed together (Civ. Code, § 1642), it does not follow that for all purposes they constitute one contract." (*Malmstedt v. Stillwell* (1930) 110 Cal.App. 393, 398.)

Finally and dispositively, NKC's highest hurdle in importing the mediation-first clause from one agreement to the other is that the two contracts are not "between the same parties," an express requirement for section 1642 to apply. Knezevich and Paulus executed the stock purchase agreement in their *personal capacities*, as buyer and seller, in order to effect a transfer of Paulus's ownership in the dealership to Knezevich. The

side agreement was not between those men individually; it was between San Leandro Land and Paulus Enterprises, as landlord and tenant for the premises on which the dealership operated. Throughout its briefing, NKC speaks of "the opposing parties as 'Paulus' and 'Knezevich' unless otherwise specified," but that distorts matters in the context of this issue. This lawsuit is between the *business entities* for which Paulus and Knezevich signed only in their *representative* capacities at that time, and the agreement sued upon is not the stock purchase agreement between those men individually, but the entities' landlord\tenant side agreement.

NKC would have us abrogate the same-parties rule by following the lead of cases that have relaxed it in unusual circumstances where mutually contingent stock sales by three sellers, under separate contracts, were to a common buyer, without inter-defendant contracts governing delivery of the stock (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 415-417), and where an arbitration clause was applied to defendants who were related companies that hired plaintiff at the same time (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1675). The circumstances here are hardly comparable. NKC might have a stronger argument had Knezevich accepted an early draft proposal in the side agreement that he *guarantee* the subtenant's payments, but he did not agree. He successfully secured elimination of the guarantee.

**DISPOSITION**

The judgment and modified judgment are affirmed.

_____
Kline, P.J.

We concur:

_____
Haerle, J.

_____
Richman, J.